IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
Plaintiff,

v.

VITALY KORCHEVSKY,
Defendant.

Crim. No.: 15-381 (RJD)

BRIEF IN SUPPORT OF MR. KORCHEVSKY'S
MOTION FOR A BILL OF PARTICULARS

SULLIVAN & BRILL, LLP
117 Broadway 17th Floor
New York, NY 10006
(212) 566-1000
*Attorneys for Defendant Vitaly Korchevsky*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

I.   RELEVANT FACTUAL BACKGROUND ...................................... 2

  A.  The charges alleged in the indictment .................................... 2

  B.  The discovery produced to date by the government. ........................ 4

      1.  The stock trades. ...................................................... 5

      2.  The press releases .................................................... 5

      3.  The exchange of the alleged material, non-public information .............. 6

      4.  The money involved in the conspiracies ................................ 7

II.  THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS TO
     PREPARE FOR TRIAL AND AVOID UNFAIR SURPRISE ........................... 8

  A.  Legal standard: bills of particulars generally.................................. 8

  B.  The bill of particulars in insider trading and securities fraud cases, and the
      need for specificity regarding every stock trade the government alleges is
      improper. ............................................................... 10

  C.  The government should identify all known conspirators and individuals
      referenced in the discovery ............................................. 14

  D.  The government should provide the specific press release pertaining to each
      alleged improper trade, and the date, time and way in which Mr. Korchevsky
      received it ............................................................. 20

  E.  The government should identify the evidence regarding Mr. Korchevsky
      joining the charged conspiracies ....................................... 22

  F.  The government should provide and/or identify evidence regarding the
      alleged illegal computer intrusion....................................... 23

  G.  Other disclosers necessary to avoid surprise at trial ...................... 24

i

H.  Reservations of rights ........................................................................................ 26

CONCLUSION ............................................................................................................ 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Honeycutt v. United States*, No. 16-142, 2017 WL 2407468
(U.S. June 5, 2017) ........................................................................25

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) .........................9,12

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988) ..........................12,13

*United States v. Barrett*, 153 F. Supp. 3d 552 (E.D.N.Y. 2015) .....................15

*United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009), *aff'd sub nom*
*United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) ...................15

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000)
*aff'd sub nom. . In re Terrorist Bombings of U.S. Embassies in E. Africa*,
552 F.3d 93 (2d Cir. 2008) ..............................................................9,12,22

*United States v. Contorinis*, 09 Cr. 1083(RJS), slip op.
(S.D.N.Y. May 5, 2010).....................................................................11

*United States v. Martoma*, No. 12 CR 973 (PGG), 2013 WL 2435082
(S.D.N.Y. June 5, 2013) ..................................................................15

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000)............9,12,15

*United States v. Oruche*, No. 07 CR. 0124 (WHP), 2008 WL 612694
(S.D.N.Y. Mar. 5, 2008) *aff'd sub nom. United States v. Oluigbo*,
375 F. App'x 61 (2d Cir. 2010)..........................................................16

*United States v. Rajaratnam*, No. 09 CR. 1184 (RJH), 2010 WL 2788168
(S.D.N.Y. July 13, 2010) ...............................................................10,11,15

*United States v. Savin*, No. 00 CR. 45 (RWS), 2001 WL 243533
(S.D.N.Y. Mar. 7, 2001) ..................................................................12

*United States v. Nacchio*, No. 05 CR 00545 EWN, 2006 WL 2475282
(D. Colo. Aug. 25, 2006).................................................................11

iii

*United States v. Newman*, No. 12 - 121 (S.D.N.Y. Aug. 29, 2012) .................16

**Rules**

Fed. R. Crim. P. 7(f) ....................................................................................1,8,14

<u>PRELIMINARY STATEMENT</u>

Defendant Vitaly Korchevsky moves this Court to order the government to provide a bill of particulars, pursuant to Federal Rule of Criminal Procedure 7(f). Without the requested particulars, the defense will be unable to effectively prepare for trial, be subject to surprise at that trial and generally be left to guess at the meaning of ambiguous, unspecified and overbroad allegations in the Indictment.

Much is at stake for Mr. Korchevsky in this case. Mr. Korchevsky came to America as a religious refugee from the former Soviet Union, and has worked hard to become a prominent Slavic Baptist minister. He has dedicated his life to his faith, his congregation, and his wife and two young children. In addition, Mr. Korchevsky worked in the financial industry, and developed an acumen, talent and reputation as a securities trader. He built a successful career in the stock-trading world, that has spanned over 15 years. Should he be convicted of the instant indictment he would be exposed to significant jail time.

The government has an incontrovertible obligation to provide the information necessary for Mr. Korchevsky to be able to defend himself against the charges levied in the indictment against him. The defense has attempted to resolve, and has resolved, some of these issues with the government prior to filing this motion. Attached as Exhibit A is a copy of the letter requesting the particulars essential for

1

Mr. Korchevsky's defense.[1] The government, however, has declined to provide those particulars. It is therefore, respectfully requested that the Court direct the government to provide the particulars, outlined below, relating to the charges in the Indictment.

## I.    RELEVANT FACTUAL BACKGROUND

### A.    The charges alleged in the indictment

Mr. Korchevsky was charged under a five-count Superseding Indictment, docket number 15-381, with the following: (1) conspiracy to commit wire fraud under 18 U.S.C. §1349 and 3551; (2) conspiracy to commit securities fraud and computer intrusion under both 15 U.S.C. §78j(b), 78ff, and 18 U.S.C. §1030(a)(2), 1030(b), 1030(c)(2)9A) and 1030(c)(2)(B); (3) Securities Fraud, due to alleged PR Newswire unauthorized computer intrusions, pursuant to 15 U.S.C. §78j(b) and 78ff; (4) a separate securities fraud due to alleged Marketwired unauthorized computer intrusions, pursuant to 15 U.S.C. §78j(b) and 78ff; and (5) ) and Money Laundering, pursuant to18 U.S.C. §1956(h). According to the Indictment, between February 2010 and August, 2015, the defendant and his co-conspirators, stole more than 100,000 press releases and executed approximately 1,000 "inside the window trades" in the specified, or target, companies.[2]   In the Indictment, the government

---

1  Counsel made this request to the government in an effort to resolve this discovery matter without involving the Court, as required by Local Criminal Rule 16.1. The government responded that it needed additional time to address the requests.

2 The "window" refers to the time between the upload of a press release to a newswire service and it public distribution.

identified approximately 50 "target entities."   In the subsequent discovery, the number of target entities (and alleged inappropriate trades) expands significantly. There is no representation, however, from the government that the list exchanged in discovery is a complete representation of all the target entities.

The press releases were allegedly obtained through unauthorized computer intrusions[3] of servers belonging to financial newswire service companies, such as PRNewswire (PRN), Market Wired (MW) and Business Wire (BW).   These press releases contained certain economic information for a particular company – such as earnings, gross margins, revenues, future earnings and revenue guidance - and were intended and scheduled for dissemination to the general public.   The allegation is based on the theory that "hackers" obtained possession of several thousand press releases and shared some or all of them with other co-conspirators, at which point, trades were executed based on that information. It is also alleged that Mr. Korchevsky, specifically, controlled brokerage accounts at E*Trade, Jeffries, JP Morgan, Scottrade, and TD Ameritrade and knowingly conducted trades within those accounts based on information provided by co-conspirators.

Moreover, as a result of this improper trading scheme, Mr. Korchevsky purportedly profited more than $17 million dollars, and that the conspiracy as a whole profited more than $30 million dollars.   It is further alleged that co-

---

3 The government repeatedly uses the inflammatory colloquialism "hack," which Mr. Korchevsky contends, given the current political and news climate, is prejudicial and should not be allowed at trial.

conspirators paid the individuals who obtained unauthorized possession of the press releases. The exchange of money reportedly occurred in different ways such as wire transfers and providing the hackers with access to bank and brokerage accounts from which they are alleged to have removed funds.   There are also allegations that money was exchanged among the co-conspirators via off-shore and overseas bank accounts.

      Furthermore, Mr. Korchevsky was charged with Conspiracy to Commit Money Laundering pursuant to 18 U.S.C. § 1956(h) and 3551. The Indictment accuses Mr. Korchevsky of transferring funds from inside the United States to outside of the United States, and from one or more places outside the United States into the United States, with the intent to promote the carrying on of the criminal conduct, and with an intent to conceal the nature or source of the funds.

      **B.**   **The discovery produced to date by the government**

      The discovery generated from this case, which spans a term of over five-years, is massive, so massive that the Court has deemed this case "complex."   In addition, phones, computers, tablets, flash drives, and external hard drives have been seized, imaged and analyzed by the government and their investigators. In addition, the government has exchanged several terabytes of data, which translates into millions of documents, which include the contents of large-scale computer and server images, spreadsheets, and emails.   In fact, as recently as a few weeks ago, the government exchanged an additional two-terabyte hard drive

containing extensive data pertaining to bank records, trading data, and other financial documentation.

### 1. The stock trades

With respect to the trades at issue, the Indictment does describe the alleged scheme by identifying **some** of the stocks that were traded in connection with this alleged conspiracy. However, this is by no means a comprehensive list. In addition to the Indictment, the government has provided supplemental information through an excel spreadsheet entitled "Korchevsky Accounts Event Listing," which identifies Mr. Korchevsky's alleged improper trades with press release timing, dollars traded and profit or loss amount.   Significantly missing are specific details surrounding the trades, critical to effectively preparing Mr. Korchevsky's defense. For example, the discovery does not contain the type of trade (whether it was a stock purchased short sale or option), the number of shares or option contracts traded, and the specific details surrounding the closing of the position.

### 2. The press releases

The government has also exchanged spreadsheets for each of the newswire services involved, which, in the case of PRNewswire and Marketwired list the date, the company involved and the headline of the press releases. The spreadsheet for Business Wire contains even less information; it does not include the headline. It is just a listing of dates, times and company listings. The headlines, as one might

imagine are often devoid of specific information.[4] Absent from the discovery are the full and complete press releases as they appeared on the newswire services' servers. Furthermore, the press release discovery does not identify and/or differentiate between the press releases as they were drafted and submitted to the financial newswire services and the press releases as they appeared as published.   Finally, there is no identification of, or correlation between, the relevant press release and a specific, corresponding allegedly improper trade.   Instead the government has merely provided a spreadsheet listing the companies, dates and, sometimes, the headlines of the press release disseminated during the five-year term of the Indictment.

### 3. *The exchange of the alleged material, non-public information*

The government has alleged that the non-public information in this case stems from press releases created by publically traded companies that were then sent to newswire services to be distributed at a later time. As explained, the actual contents of the press releases was not provided. The government identified the tens of thousands of press releases by date, but has not provided the actual, original press releases that are alleged to be the source of the non-public information on which the improper trades were made.   The vast majority of the press releases condensed and appearing on the government's spread sheet, have no connection to

---

4 As examples: from Markewired, 10/8/2015, "AmbiCom Retires Convertible Debt Vehicle;" From PRNewswireNine, 1/3/2012, "Porsche Reports Significant Sales Increase for 2011."

the instant case, so it raises the understandable question as to how Mr. Korchevsky is alleged to have taken possession of this non-public information.

In apparent response, the government has produced the contents of email accounts, computers, cell-phones, hard drives and cloud storage accounts. This comprises thousands upon thousands of emails and text messages attributed to Mr. Korchevsky and the other co-defendants.   These emails and texts are not limited to communications between co-defendants, but also encompass personal, spam and unrelated communication.

Even within the legion of communication between the co-defendants the discovery does not pinpoint the alleged sharing or possession of specific non-public information connected to alleged improper trades in this case, nor does it indicate the way in which Mr. Korchevsky supposedly received it.   According to the Indictment, Mr. Korchevsky traded on non-public information from the hacked press releases on over 600 occasions, but the discovery does not contain even a single specific indication of when and how Mr. Korchevsky received non-public information as it pertains to one of these trades.

### 4.  *The money involved in the conspiracies*

The indictment alleges that the hackers received compensation for their role in this conspiracy.   The transfer of money allegedly occurred in several ways, including wire transfers, accessing brokerage/bank accounts and depositing into off-shore or overseas accounts.   The discovery includes bank and brokerage statements, cancelled checks, but not discovery pertaining to: (1) transfers of money

from co-defendants to other co-defendants; (2) transfers of money from co-defendants to the hackers; or (3) Transfers of money from Mr. Korchevsky to other co-defendants or to the hackers.

## II.   THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS TO PREPARE FOR TRIAL AND AVOID UNFAIR SURPRISE

While the government, by any account, has exchanged an abundant amount of discovery, it is not the volume of the discovery that is relevant. In fact, by producing so many documents, most of which are unrelated, and by failing to identify the most important, and basic that relate to the allegations inherent in any insider trading, computer intrusion and money laundering, the government has compromised Mr. Korchevsky's ability to prepare a defense compelling him to expend time and resources searching for the proverbial needle in a haystack.

The instant motion for a bill of particulars is not made in a highly contentious manner. The government has been receptive to conversations regarding discovery, and willing to provide certain requests on which we could agree. Rather, the purpose of this motion is to resolve disputes on which the two sides cannot agree. Most importantly, the specific information the defense seeks through a bill of particulars is necessary to permit the defense to not only prepare any subsequent pre-trial motions, but prepare adequately and effectively for the upcoming trial.

### A.   Legal standard: bills of particulars generally

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars "in order to identify with sufficient particularity the nature

of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (quotation marks omitted). The decision to order the filing of a bill of particulars rests within the sound discretion of the district court. *Id.*; *United States v. Nachamie*, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000).   However, "[i]n exercising that discretion, the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a particulars is warranted" *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000).

Courts in the Second Circuit have routinely held that the government must provide a defendant with specific information about the allegedly criminal conduct that forms the basis of the charges against him, including specific dates and details about the allegedly unlawful activity. Where the Government has failed to provide this information, a bill of particulars is warranted. *See Bortnovsky*, 820 F.2d at 574-75 (reversing district court's refusal to grant a bill of particulars where the indictment failed to specify the dates of the alleged burglaries because without it defense was "left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated as staged"); *Nachamie*, 91 F. Supp. 2d at 571 (ordering a bill of particulars specifying, inter alia, the identity and details of allegedly false claims and the allegedly false documents used in the

9

conspiracy, where the defendants were charged with conspiracy to commit Medicare fraud related to 2,000 claims and the Government had "not yet informed the defendant which of these claims were false and in what way they were false").

**B. The bill of particulars in insider trading and securities fraud cases, and the need for specificity regarding every stock trade the government alleges is improper**

The requirement that the government must provide specific information about the alleged criminal conduct can apply with even greater force in the insider trading context. *See e.g., United States v. Martoma*, No. 12 CR 973 PGG, 2013 WL 2435082, at *3 (S.D.N.Y. June 5, 2013). In Mr. Korchevsky's case, the allegations against him are dependent on complex factual questions concerning exactly which securities the government accuses him of trading illegally, and the date, time, number of shares and type of position as it pertains to each trade at issue.

In *United States v. Rajaratnam*, former Southern District Judge Richard Holwell, ruled on a similar defense request.   In that case, Mr. Rajaratnam was charged with engaging in an insider trading conspiracy in which he illegally traded approximately 31 stocks. He sought a bill of particulars to provide "more detailed information about the nature of the inside information they [were] alleged to have exchanged, and about the trades they allegedly made based on that inside information." *United States v. Rajaratnam*, No. 09 CR. 1184 (RJH), 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010). Judge Holwell granted the defendant's motion and held that "there is precedent for directing the filing of a bill of particulars in an insider trading conspiracy case." *Id.*

10

The *Rajaratnam* Court relied on *United States v. Contorinis*, 09 Cr. 1083(RJS), slip op. (S.D.N.Y. May 5, 2010), where the Court directed the government to submit a bill of particulars with respect to material, non-public information connected with a specified transaction, and *United States v. Nacchio*, No. 05 CR 00545 EWN, 2006 WL 2475282, (D. Colo. Aug. 25, 2006), a case in which the government was ordered to provide additional particulars regarding the nature of the inside information alleged in the indictment. In considering these decisions, Judge Holwell pointed out that *Rajaratnam* was "far larger than *Contorinis or Nacchio*—or, indeed, any insider trading case either side has cited. At issue in this case are 31 stocks, many more than the single stock at issue in *Nacchio* or the four stocks at issue in *Contorinis*. As noted, the case involves dozens of co-conspirators, charged and uncharged." *Rajaratnam*, 2010 WL 2788168, at *2.

Here, the government alleges that Mr. Korchevsky and the other members of the conspiracy made over 1,000 illegal trades – apparently connected to a similar number of stocks-- far greater than the 31 stocks involved in the *Rajaratnam* matter.   The government has failed to provide Mr. Korchevsky with complete and specific information about the trades, including the dates and times of each of the trades, the number of shares traded, the type of trades executed, and the accounts from which the trades occurred.   It is not disputed that the government has exchanged a large amount of discovery pertaining to the trades at issue, but that volume alone does not mitigate the problem. Moreover, even among the literally millions of pages of discovery, there is no clear item that identifies: (1) each of the

11

securities at issue in the indictment; (2) the timing of each fully executed trade at issue; (3) the type of each trade at issue; and (4) the number of shares involved in each trade at issue.

In fact, even outside of an insider trading case, the sheer volume of discovery can implicate a need for a bill of particulars.   In *United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008), the Court stated, "it is no solution to rely solely on the quantity of information disclosed; sometimes, the large volume of material disclosed **is precisely what necessitates a bill of particulars**." *Id.* at 234 (emphasis added). *See also United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (holding that district court erred in denying request for particulars regarding victims of each discrete extortion scheme the government intended to prove); *Bortnovsky*, 820 F.2d at 575 (finding it was not sufficient for the government to "provid[e] mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged"); *United States v. Savin*, No. 00 CR. 45 (RWS), 2001 WL 243533, at *1 (S.D.N.Y. Mar. 7, 2001) (granting request for particulars about defendant's role in transactions, where defendant had "been provided with 100,000 pages of discovery," a "veritable mountain of documents" that the government would have forced the defendant "comb through" to "attempt to guess at" which transactions, during a six-year period, were allegedly improper); *Nachamie*, 91 F. Supp. 2d at 571-72 (granting bill of particulars where government

had produced 200,000 documents relating to 2,000 Medicare claims, but had not told the defendants which claims were alleged to be false).

Here, the Indictment identifies trading in the stocks of approximately ninety companies.   In addition, the government provided defense counsel with an excel spread sheet on February 14, 2017, entitled "Korchevsky Accounts Event Listing," containing over 700 trades made by Mr. Korchevsky which are alleged to be improper as based on non-public information. Since 2010, the year this conspiracy purportedly began, until 2015, Mr. Korchevsky executed thousands of trades. That trading activity includes purchases and sales of stock that are not alleged in the Indictment, or in the discovery, as being illegal. If the government is to offer evidence at trial of allegedly illegal trades beyond those identified in the Indictment, or the discovery, it must provide notice through a bill of particulars. *See Davidoff*, 845 F.2d at 1154 (reversing conviction for failure to grant bill of particulars where indictment alleged extortion of one company but at trial the defendant was "confronted with evidence of extortions aimed at entirely different companies").

Without a bill of particulars, because the government has included all of his brokerage records for over five years, in the discovery, Mr. Korchevsky would be compelled to analyze and defend not only the trading activity specifically identified in the Indictment and the exchanged spreadsheet, but **all of his trades**, essentially and shifting the burden of proof to him.

13

Accordingly, Mr. Korchevsky respectfully requests that the Court order the government to provide a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) that identifies the following:

    a.  a complete listing of the particular stocks and trades the government contends were made based on inside information;

    b.  the date and time each trade (opening position) along with the brokerage account in which the trade was made;

    c.  the type of trade or position executed;

    d.  the number of shares or contracts traded;

    e.  the cost of the opening position;

    f.  the date and time of the closing of the position; and

    g.  the profit or loss resulting from the closing of the position.

C.  **The government should identify all known co-conspirators and individuals referenced in the discovery**

Aside from Mr. Korchevsky, the government, in the EDNY and DNJ indictments, has identified and charged the following co-conspirators: Arkaidy Dubovy, Igor Dubovoy, Pavel Dubovoy, Vladislav Khalupsky, Leonid Momotok, Alexander Gardkusha, Ivan Rurchynov, and Oleksandr Ieremenko.   However, in the millions of documents exchanged, there are items relating to other individuals who are not referenced in the indictment.   Furthermore, a sworn affidavit from FBI Agent Jonathan Polonitza stated that "the investigation has identified more than a

14

hundred traders who appear, based upon our analysis to have traded on the hacked information."

The factors to consider in addressing whether a bill of particulars identifying unindicted co-conspirators should be ordered have been enumerated by the *Nachamie* Court:

> In deciding whether a defendant's demand for the names of known unindicted co-conspirators would achieve these ends, courts should consider the following factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation. If there are a large number of co-conspirators and a long-running conspiracy, a defendant is more likely to be surprised by the identity of other co-conspirators, whom he may never have met.

*Nachamie*, 91 F. Supp. 2d at 572.

Courts applying these factors have compelled the government to provide the identities of those individuals in a significant number cases. *See United States v. Barrett*, 153 F. Supp. 3d 552, 573 (E.D.N.Y. 2015) (holding "potential for unfair surprise looms large here, and this factor therefore counsels strongly in favor of a bill of particulars regarding unindicted co-conspirators"); *Martoma*, 2013 WL 2435082, at *7 (ordering government to identify all known co-conspirators in insider trading case); *Rajaratnam*, 2010 WL 2788168, at * 1 n. 1 (government provided co-conspirators for each count in insider trading case); *United States v. Kahale*, 789 F. Supp. 2d 359, 374 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) (ordering government to identify unindicted co-

15

conspirators in mail and wire fraud case); *United States v. Newman*, No. 12 - 121 (S.D.N.Y. August 29, 2012); (ordering bill of particulars providing, inter alia, "the identity of known co-conspirators"); *United States v. Oruche*, No. 07 CR. 0124 (WHP), 2008 WL 612694, at *4 (S.D.N.Y. Mar. 5, 2008), *aff'd sub nom. United States v. Oluigbo*, 375 F. App'x 61 (2d Cir. 2010) (ordering bill of particulars disclosing identities of unindicted co-conspirators).

Mr. Korchevsky's case implicates all of the factors set out it *Nachamie*, most clearly the three that are essential to allow Mr. Korchevsky to be able to defend against the charges: the government has alluded to dozens, if not over 100 co-conspirators; the conspiracy is alleged to have spanned two continents and gone on for more than five years; and the volume of discovery is immense. Therefore, the government should be ordered to identify other unindicted co-conspirators.

Similarly, the discovery to date contains documents, such as email records, brokerage account statements, bank account information, and social media records, from over **fifty** individuals, listed below, who are not listed or identified in the indictment. It is entirely unclear who the vast majority of these individuals are, and what role they play in the conspiracies charged in the Indictment. Without any level of particularization regarding these individuals, Mr. Korchevsky runs a genuine risk that the government will unfairly surprise him at trial.   As the Court is aware, the essential reason for requiring the government to generate a bill of particulars is to avoid this precise result.

Thus, in order that Mr. Korchevsky can adequately prepare for trial, the government should be ordered to identify all known co-conspirators not included in the charging instruments, and their role within the instant conspiracy.   In addition, in the event any of the individuals, identified in the discovery and listed below, are not co-conspirators, the government should be ordered to identify who they are, and specify the role each of them play in connection with the charges in the indictment.

    a. "Bosiuk"

    b. "Tovach"

    c. "Rostyslav Velychko"

    d. "Alex.Boesky@gmail.com"

    e. "N0klos" (Facebook)

    f. "warningggp@gmail.com"

    g. "David.Amaryan@gmail.com"

    h. "DaneWinters@hotmail.com"

    i. "Andrey Logachev"

    j. "Janna Sergeevna Risch"

    k. "Andrey Shemetov@aton.ru"

    l. "Pauloo333@gmail.com"

    m. "Demetry Aleksandrovich Chastin"

    n. "Albor495@gmail.com"

    o. "alexwfj1@yahoo.com"

p.  "rugevo@gmail.com"

q.  "A. Schreiner"

r.  "N. Shah"

s.  "J. Cybulko"

t.  "Y. Haviv"

u.  "S. Walfisz"

v.  "Roman Lavlinskiy@gmail.com"

w.  "Jurij Cybulko"

x.  "greatware@gmail.com"

y.  "greygoosedoor@msn.com"

z.  "Nps50K@gmail.com"

aa. "Trask2@ZAHAV.NET.IL"

bb. "Joe Zheng"

cc. "Nickolai Slepenkov"

dd. "Rafael Gidron"

ee. "Artem Efremov"

ff.  "Boris Ozerski"

gg. "Almontang@gmail.com"

hh. "Almonsnow, Vaiobro, Uaxakep, Antkleo, Shaback" (gmail accounts)

ii.  "as65qwerty@gmail.com"

jj.  "kulnev1989@gmail.com"

18

kk. "vlp2000@gmail.com"

ll.  raketa78@gmail.com

mm.   "liza@businesswire@gmail.com"

nn. "Vadym Lermolovych"

oo. "olivedefenders@gmail.com"

pp. "positive1110@gmail.com"

qq. "sergematveev, sergem105" (gmail accounts)

rr.  "albor495, algo495, bilbrown599, bkasper888, dcf2022, market2013, paulo333 – (Gmail accounts)

ss. "HsonicH" – (Twitter)

tt.  "nadalbiz@ymail"

uu. "vvittorioo, gashion_kitchen, SDU, Ctacok, Alutachi" – (Twitter accounts)

vv. "hzorkah" – (Skype account)

ww.   "Jwilliamsmccherry" – (gmail)

xx. "Juilo Tamayo"

yy. Oleksandr.ieremenko@gmail.com

zz. "Julia Korol"

aaa.   vaer@ukr.net (dimdim11) – (Instagram account)

bbb.   sfincks@mail.ua

ccc.   ivan@emehanika.biz – (Dropbox account)

ddd.   "kuntsinna777" – (gmail)

eee.    Lowisnettles" – (gmail)

### D.    The government should provide the specific press release pertaining to each alleged improper trade, and the date, time and way in which Mr. Korchevsky received it

The crux of any insider trading case involves knowing possession of specific, material, non-public information when executing a stock trade. Here the government has alleged that Mr. Korchevsky made hundreds of trades based on his possession of non-public information in the form of undistributed press releases. Therefore, it is incumbent upon the government to provide Mr. Korchevsky with the specific non-public information, that is, the actual and full press release alleged to connected with each and every alleged improper trade. Logically, if the press release is the instrument that contained the non-public information, the press release, in its entirety, must be exchanged.

In addition, because the facts indicate that the press releases were first drafted by the company making the announcement, and subsequently disseminated by the newswire service, the government must provide both documents if they are different from each other in any way. Without knowing precisely what material, was alleged to be in Mr. Korchevsky's possession, it is not possible to determine if the information was material and/or non-public, which is, by definition, the *sin qua non* of a securities fraud charge.

Equally as important, the government must provide the date, time and way in which Mr. Korchevsky is alleged to have received or accessed this material, non-public information. Despite the mass of emails, texts, phone records and contents of

computers, phones and storage devices, the government has not identified the details surrounding exactly when and how Mr. Korchevsky supposedly received this information in order to then execute a subsequent trade.

Therefore, the government should be ordered to produce the following:

a. the full, actual press release, drafted and submitted by each company at issue in this case, <u>before</u> they were submitted to the financial news services;

b. the full and actual press releases as they appeared on the newswire servers when they were "hacked;"

c. any documentation that Mr. Korchevsky was in possession of any press release prior to its public distribution;

d. any documentation that Mr. Korchevsky accessed any server, account or device containing a press release prior to its public distribution;

e. any and all forms of communication demonstrating how Mr. Korchevsky received the alleged material non-public information (MNPI) contained in a press release prior to its public distribution specific information Mr. Korchevsky received in relation to each of the improper trades he allegedly executed; and

f. the specific date and time at which Mr. Korchevsky received the alleged non-public information in relation to each alleged improper trade.

21

E.   <u>The government should identify the evidence regarding Mr. Korchevsky joining the charged conspiracies</u>

Mr. Korchevsky is charged with three separate conspiracies involving scores of named and un-named co-conspirators. Certainly, the government's proof of this must be presented at trial. Although it is true that generally "particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy" are not granted prior to trial, *Bin Laden*, 92 F. Supp. 2d at 242, in this case, Mr. Korchevsky is requesting something different, and the traditional analysis is not applicable.

In this case, the government, in the form of over two and half million documents and counting, has provided "a beach." To say that "the 200 indispensable grains of sand are somewhere on the beach," is tantamount to providing nothing at all. Mr. Korchevsky is asking the government to identify which, if any, already-exchanged documents, implicate his joining any of the charged conspiracies. Therefore, the Court should order the government to identify or provide the following:

> a.   any document indicating the approximate date and location of any meeting, conversation, or any other sort of activity, at which the Government will contend that Mr. Korchevsky joined the Wire Fraud, Securities Fraud conspiracies;
>
> b.   any document indicating approximate date and location of any meeting, conversation, or any other sort of activity, at which the

22

Government will contend that Mr. Korchevsky joined the Computer Intrusion conspiracy; and

c.   any document indicating approximate date and location of any meeting, conversation, or any other sort of activity, at which the Government will contend that Mr. Korchevsky joined the Money Laundering conspiracy.

### F.   The government should provide and/or identify evidence regarding the alleged illegal computer intrusion

The Superseding Indictment charges Mr. Korchevsky with conspiracy to commit Computer Intrusion, pursuant to 18 U.S.C. § 1030. With respect to the alleged computer intrusion (hacking) into the PRN, BW, and MW computer servers, the Court should order the government to provide

a.   the date and year the government discovered the computer intrusion with respect to each of the financial news services;

b.   the circumstances surrounding how the government discovered the computer intrusion with respect to each of the financial news services;

c.   the role played by United States Secret Service in identifying evidence of any computer intrusion relating to PRN, MW and BW; and

    d. any evidence directly connecting Mr. Korchevsky, either by IP address or otherwise, with any attempted or completed computer intrusion or hacking of a PRN, MW and BW server.

### G.   Other disclosers necessary to avoid surprise at trial

The indictment contains many general allegations relating to the transfer of funds between co-conspirators, and the money laundering and forfeiture counts. In particular, the government has alleged in the indictment that payments were made from the traders to the hackers. The government has exchanged dozens of financial accounts from many of the alleged co-conspirators. Transaction data from one account often does not indicate the end destination of a transfer. Given that there may be upwards of a hundred unidentified co-conspirators, it would truly be a herculean, if not impossible, task to try to identify and trace every exchange of funds in these thousands of transactions.

As a result, the government should be ordered to provide the following:

    a. any benefit it contends any co-defendant, including any hackers, received from another co-defendant as part of alleged illegal conduct;

    b. the date, time and mechanism relating to every exchange of money between non-hacker co-defendants;

    c. the date, time and mechanism relating to every exchange of money made from co-defendants to hackers;

24

    d.   the date, time, and mechanism relating to every exchange of money from Mr. Korchevsky to other co-defendants, including hackers;

    e.   the specific nature, time, date and location of each of the "financial transactions" alleged to involve the "proceeds of specified unlawful activity;"

    f.   the specific nature of the "unlawful activity" allegedly involved in each of the transactions listed above;

    g.   the specific type of "property" involved in each transaction; and

    h.   the role, if any, that Mr. Korchevsky allegedly played in any transaction.

With respect to the money laundering counts, the government should disclose the following:

    a.   the evidence supporting the intention to conceal or disguise the nature, location, source, ownership, and control of proceeds from an alleged specified unlawful activity;

    b.   the specific place or places where Mr. Korchevksy transported, transmitted or transferred funds in derived from this alleged conspiracy;

With respect to the forfeiture allegations, particularly in light of the Supreme Court's recent decision in *Honeycutt v. United States*, No. 16-142, 2017 WL 2407468 (U.S. June 5, 2017), the government should be ordered to disclose the following:

    a.  the value and nature of the "property" subject to forfeiture and basis upon which it is subject to forfeiture;

    b.  whether any such property was obtained "directly or indirectly, as a result of the offense; and

    c.  all documents establishing the funds or property actually acquired or obtained by Mr. Korchevsky directly connected to the alleged crime.

**H.**   <u>Reservation of rights</u>

The defendant respectfully reserves his rights to make further motions, including motions to suppress, based on, among other things, any information received as a result of the Court's decision on this motion or outstanding discovery demands, currently pending.

<u>CONCLUSION</u>

Mr. Korchevsky has an absolute right to prepared a meaningful defense. In order to do so there is critical discovery that must be provided, identified and/or particularized. For all the reasons outlined above, the Court should grant the relief requested herein.

**RESPECTFULLY SUBMITTED.**

Dated: June 16, 2017.

                              SULLIVAN & BRILL, LLP
                              Counsel for Defendant

VITALY KORCHEVSKY

By:  s/_____
     Steven Brill
     James Healy
     Rachel Brill