UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
UNITED STATES OF AMERICA,

        - against -

VITALY KORCHEVSKY and
VLADISLAV KHALUPSKY,

              Defendants.
------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★   **FEB 1 6 2018**   ★

BROOKLYN OFFICE

**MEMORANDUM & ORDER**

15 CR 381 (RJD)

DEARIE, District Judge

      Defendant Vitaly Korchevsky is alleged to have traded upon information contained in press releases and earnings information that he obtained illegally in advance of their public release, by working with others to hack into the computer networks of three newswires—PR Newswire, Business Wire, and Marketwired (collectively, the "Victim Newswires"). Korchevsky is charged in a five-count superseding indictment with conspiracy to commit wire fraud, conspiracy to commit securities fraud and computer intrusions, two counts of securities fraud, and conspiracy to commit money laundering. Before the Court are Korchevsky's motions to dismiss Counts Two, Three, Four, and Five of the superseding indictment under Fed. R. Crim. P. 12(b)(3)(B) and his motion to strike surplusage from the superseding indictment under Fed. R. Crim. P. 7(d). See Def. Mot. to Dismiss and Other Pretrial Relief, ECF No. 177. Korchevsky's co-defendant, Vladislav Khalupsky, joins in these motions. The motions are denied.

BACKGROUND

      The following factual background is reflected in the superseding indictment, "the allegations of which we accept as true for purposes of the present motions." See United States v. Rajarantnam, No. 13 CR. 211 (NRB), 2014 WL 1554078, at *1 (S.D.N.Y. Apr. 17, 2014) (citations omitted); see also Superseding Indictment, ECF No. 105. Until 2009, Vitaly

Korchevsky, a resident of Glen Mills, Pennsylvania, was a hedge fund manager and investment adviser. From approximately February 2010 through August 2015, however, Korchevsky worked in consort with a number of individuals as a key participant in a trading scheme and conspiracy, as alleged in considerable detail in the superseding indictment.[1] The co-conspirators were split into three groups: the "Hackers," "Middlemen," and "Traders."

Using various sophisticated computer intrusion techniques (generally known as "hacking"), the Hackers stole confidential, unpublished press releases that contained material, non-public information ("MNPI") related to particular publicly traded companies (the "Target Companies"). More specifically, the Target Companies provided the press releases and MNPI to the Victim Newswires. The press releases, which were intended for subsequent release to the public, contained financial information about the Target Companies, relating to earnings, gross margins, and revenues, as well as other material information. The press releases were then maintained for a brief period of time on the Victim Newswires' servers. The Hackers obtained the press releases and MNPI shortly after they were uploaded onto the Victim Newswires' servers. The Hackers then quickly transmitted this information to the Middlemen, who relayed it to the Traders, all before it became publically available. The Hackers, Middlemen, and Traders worked together and exchanged the stolen MNPI using, among other means, interstate and international e-mail, phone, and internet communications.

The Traders, including Korchevsky and Khalupsky, then bought and sold securities on the basis of the stolen MNPI. Their trades were executed "inside the window" (i.e., prior to the

---

[1] Korchevsky's co-conspirators included his co-defendant, Vladislav Khalupsky, as well as Leonid Momotok, Alexander Garkusha, Arkadiy Dubovoy, Igor Dubovoy, Pavel Dubovoy, Ivan Turchynov, and Oleksandr Iremenko.

public disclosure of the press releases, and before the public securities market was aware of or had the opportunity to trade on the information they contained). Once the inside the window trades were completed, the Traders paid the Hackers a percentage of their profits. To do so, the Traders wired the proceeds of their fraudulent trading to accounts held in the names of overseas shell companies, some of which were in Estonia. The Traders and Hackers had joint access to these accounts. From approximately January 2011 to February 2014, the defendants and their co-conspirators stole more than 100,000 press releases and executed approximately 1,000 inside the window trades in Target Companies' stock, based on MNPI stolen from the Victim Newswires. Korchevsky himself profited over $17 million from these trades, at least some of which he used to purchase real estate. The conspiracy as a whole profited more than $30 million.

Based on these facts, the superseding indictment charges Korchevsky with the following five counts: (1) Count One: conspiracy to commit wire fraud under 18 U.S.C. §§ 1349 and 3551 et seq.; (2) Count Two: conspiracy to commit securities fraud and computer intrusions under SEC Rule 10b-5, codified at 17 C.F.R. § 240.10b-5, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and 78ff, 18 U.S.C. § 1030(a)(2), 1030(b), 1030(c)(2)(A), and 1030(c)(2)(B), and 18 U.S.C. §§ 371 and 3551 et seq.; (3) Counts Three and Four: securities fraud, in connection with the PR Newswire Hack (Count Three) and the Marketwired Hack (Count Four), under SEC Rule 10b-5, 15 U.S.C. §§ 78j(b) and 78ff, and 18 U.S.C. §§ 2, 3551 et seq.; and (5) Count Five: money laundering conspiracy under 18 U.S.C. § 1956(a)(2)(A), 18 U.S.C. § 1956(a)(2)(B)(i), 18 U.S.C. §§ 1956(h), and 18 U.S.C. § 3551 et seq.

Korchevsky raises various and, in some instances, overlapping arguments for the dismissal of Counts Two, Three, Four, and Five. With respect to Count Two, Korchevsky argues

3

that it is impermissibly duplicitous.  With respect to Counts Three and Four, Korchevsky argues that they fail to adequately allege securities fraud—including failure to allege a specific theory of insider trading and to demonstrate the materiality required to prove insider trading—that they are improperly pleaded in the conjunctive, and that they are either duplicitous or multiplicitous. Finally, Korchevsky argues that Count Five fails to adequately allege essential elements of money laundering conspiracy, that it is improperly pleaded in the conjunctive, and that it lacks an adequate factual basis.

The Court addresses these arguments in two parts—first, Korchevsky's claim that Counts Three, Four, and Five were insufficiently pleaded, and second, his claim that Counts Two, Three, and Four were multiplicitous or duplicitous.

Korchevsky also argues that the Court should strike alleged surplusage from the superseding indictment.

DISCUSSION

### 1.  <u>Korchevsky's Insufficiency Arguments</u>

There are "two constitutional requirements for an indictment: first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>United States v. Resendiz-Ponce</u>, 549 U.S. 102, 108 (2007) (internal quotation marks and citations omitted); <u>see also</u> <u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir. 1999).  Separately, Fed. R. Crim P. 7(c)(1) requires that an indictment state a "plain, concise and definite written statement of the essential facts constituting the offense charged." <u>See</u> <u>United States v. Pirro</u>, 212 F.3d 86, 91-92 (2d Cir. 2000) (noting that when an indictment

4

does not allege the essential elements of the crimes it charges, it offends not only Rule 7(c), but also the Fifth and Sixth Amendments).

Likewise, an indictment must contain factual detail sufficient to "apprise[] the defendant of what he must be prepared to meet." Cochran v. United States, 157 U.S. 286, 290 (1985). The purpose of the specificity in an indictment is threefold: "[i]t fulfills the Sixth Amendment right to be informed of the nature and cause of the accusation; it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." Walsh, 194 F.3d at 44 (internal quotation marks and citations omitted).

But it "need not be perfect." United States v. Caban, No. 17 CR. 426 (LGS), 2017 WL 4990653, at *1 (S.D.N.Y. Oct. 30, 2017) (internal quotation marks and citations omitted). An indictment is not intended to provide the defendant with evidence or "details of how the offense was committed." United States v. Wey, 15-CR-611 (AJN), 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017) (internal quotation marks and citations omitted). Ultimately, while an indictment's "precision and proper notice [] cannot be sacrificed for the sake of brevity…common sense must control." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (adding that criminal indictments "must be read to include facts which are necessarily implied by the specific allegations" they contain) (internal quotation marks and citations omitted).

The Second Circuit has consistently held that an indictment "need do little more than [] track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Rajarantnam, 2014 WL 1554078, at *1 (quoting United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013)) (internal quotation marks omitted); but see United States v.

Bronson, No. 05 CR. 714 (NGG), 2007 WL 2455138, at *8 (E.D.N.Y. Aug. 23, 2007) (dismissing count where indictment tracked statute but crime was "not viable under any legal theory"). And "in the absence of any showing of prejudice," it has also "repeatedly refused" to dismiss charges for lack of specificity. United States v. Adelson, 237 F. App'x 713, 717 (2d Cir. 2007) (internal quotation marks and citations omitted); see also Smith v. United States, 360 U.S. 1, 9 (1959) ("[c]onvictions are no longer reversed because of minor and technical deficiencies which [do] not prejudice the accused"). Finally, the validity of an indictment depends on "its allegations, not [] whether the Government can prove its case," and the Court "must treat [those] allegations as true." Wey, 2017 WL 237651, at *5 (citations omitted); see also United States v. Kim, No. 09 CR. 1160 (DLC), 2010 WL 1780959, at *2 (S.D.N.Y. May 4, 2010) (it is improper "to weigh the sufficiency of evidence underlying [an] indictment, unless the government has already made a full proffer" of its trial evidence) (internal quotation marks and citations omitted).

### A. Counts Three and Four

Korchevsky seeks dismissal of Counts Three and Four. He argues that they fail to adequately allege securities fraud. We disagree.

Consistent with Fed. R. Crim. P. 7(c), the language of Counts Three and Four clearly tracks SEC Rule 10b-5, codified at 17 C.F.R. § 240.10b-5 pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), the rule and statutes under which they are charged.[2] These counts also recite that the fraud occurred in or about and between February

---

[2] While Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), makes it a crime to: "use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered...any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the

2010 and August 2015, within the Eastern District of New York and elsewhere. Superseding

Indictment ¶¶ 51, 53; see also United States v. Kosinski, No. 3:16 CR. 00148 (VLB), 2017 WL

3527694, at *2 (D. Conn. Aug. 16, 2017) (while an indictment must "contain some amount of

factual particularity…courts have consistently upheld indictments that do little more than [] track

the language of the statute charged and state the time and place (in approximate terms) of the

alleged crime") (internal quotation marks and citations omitted).

Korchevsky cites the Supreme Court's decision in Russell v. United States, 369 U.S. 749,

765 (1962), presumably implying that it is applicable here and thus requires the superseding

indictment to "descend to particulars" on Counts Three and Four. See Def. Mem. of Law in

Supp. of Mot. to Dismiss ("Def. Mem."), ECF No. 178, at 6. The Court disagrees. Furthermore,

Korchevsky "cites no authority—and the Court is aware of none—to support application of

Russell to the statutes under which" Korchevsky is charged. See Wey, 2017 WL 237651, at *5

(noting that Russell was a "very rare" case that "must be seen as addressed to the special nature

of a charge of refusal to answer questions in a congressional inquiry, *not as a broad requirement*

*applicable to all criminal charges that the indictment specify how each essential element is met*")

(quoting Stringer, 730 F.3d at 136) (emphasis added). We see "no basis to depart from the usual

sufficiency framework" set forth by Rule 7(c). Id.; see also Resendiz-Ponce, 549 U.S. at 110

(the Federal Rules "are to be construed to secure simplicity in procedure" and detailed

---

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors," Rule 10b-5 provides that "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

allegations "surely are not contemplated by Rule 7(c)(1)") (internal quotation marks and citations omitted).   Mindful that "common sense and reason are more important than technicalities," Stringer, 730 F.3d at 124, we have no trouble concluding that Counts Three and Four make clear that Korchevsky is charged with securities fraud.   See United States v. Vilar, 729 F.3d 62, 81 (2d Cir. 2013) (citations omitted) (explaining that indictment "contained 'sufficient precision' to inform [defendants] of the charges [] and to enable them to plead double jeopardy") (citations omitted).

Although it was not required to "set forth evidence or details of how the crime[s] [were] committed," see United States v. Giordano, 260 F. Supp. 2d 477, 480 (D. Conn. 2002) (citations omitted), the superseding indictment in this case contains a multi-page "speaking" section that details Defendants' actions taken in furtherance of the securities fraud scheme, all of which is realleged and incorporated into Counts Three and Four.   See Superseding Indictment ¶¶ 1-44. The pleading of Counts Three and Four thus provides Korchevsky with sufficient "factual particularity to ensure that [the Government] will not [at trial] fill in elements of its case with facts other than those considered by the grand jury." See Walsh, 194 F.3d at 44 (internal quotation marks and citations omitted).   While the implementation of the criminal conspiracy did involve a level of sophistication designed to camouflage the ongoing fraud, its structure was quite simple.   Regardless of what the proof may show, there can be no credible claim that the contours of the conspiracy, the respective roles of the defendants, and the challenged substantive counts are not crystal clear in the superseding indictment.

Accordingly, Counts Three and Four are a far cry from the types of bare bones pleadings that may run afoul of the notice requirements and "basic principles of fundamental fairness" protected by the U.S. Constitution and Rule 7(c).   See Adelson, 237 F. App'x at 716; see also

Rajarantnam, 2014 WL 1554078, at *3 (denying motion to dismiss for failure to allege elements
of the crimes where indictment tracked "language of the relevant statutes...[and] provide[d]
sufficient particulars to apprise defendant of [] charges [] and avoid double jeopardy").
Korchevsky is not at risk of prejudice from the pleading of Counts Three and Four. See Caban,
2017 WL 4990653, at *2 (internal quotation marks and citations omitted) (when charges state
"elements of the offense and provide[] even minimal protection against double jeopardy, th[e]
Second Circuit] has repeatedly refused, in the absence of any showing of prejudice, to dismiss")
(internal quotation marks and citations omitted); see also Dzinchveladze v. United States, No. 06
CIV. 9415 (LAP), 2007 WL 549439, at *10 (S.D.N.Y. Feb. 21, 2007) ("Petitioner [could not]
claim any prejudice [from] the purported lack of specificity" where fraudulent acts were
described in indictment and "Government produced massive amounts of discovery") (internal
quotation marks and citations omitted); Walsh, 194 F.3d at 45 (contrasting indictment at issue,
which allowed defendant to "distinguish the counts on their face and was not devoid of any key
factual element crucial to the preparation of his defense" from cases in which indictments
prejudiced defendants due to their lack of any factual particularity, identical wording of three
counts, failure to specify subject matter under congressional inquiry, and "fail[ure] to even name
the victim of an extortion count or the means by which the threat was made"). Although
Korchevsky complains that, because the indictment offers "no factual allegations as to what
information is alleged to have been the basis of the trades...Mr. Korchevsky is at real risk for
"be[ing] convicted on the basis of facts not found by, and perhaps not even presented to, the
grand jury which indicted him," this fear is unfounded. See Def. Mem. at 13-14. To be sure, the
superseding indictment outlines, in great detail, not only the general objectives of the conspiracy,
but also Korchevsky's specific role in it: coordinating with the Middlemen and Traders;

receiving MNPI fraudulently obtained from the Victim Newswires' press releases, often via email or telephone; executing or facilitating the execution of inside the window trades based upon the stolen MNPI, through which Korchevsky and his co-conspirators realized more than $30 million in illegal proceeds, and spending portions of his trading proceeds. See Superseding Indictment ¶¶ 35, 38-43.

Finally, any conceivable concerns Korchevsky may have as to "proper pleading—notice [] and protection against double jeopardy"—are more than neutralized by the extensive pre-trial discovery provided to him, as well as the Government's willingness to assist defense counsel in identifying the trades and press releases underlying the securities fraud charges. See Gov't Resp. in Opp. to Def. Mem. ("Gov't Resp. in Opp."), ECF No. 181, at 4; see Walsh, 194 F.3d at 45 (explaining that "[w]hile a bill of particulars or discovery cannot save a 'defective indictment,' where the indictment has been found even minimally sufficient, a court may look to the record as a whole in determining whether the defendant is protected from double jeopardy…[and] ha[s] an adequate opportunity to prepare his defense.") (citations omitted). As a result, the Government's pleading of securities fraud in Counts Three and Four is more than sufficient.

Korchevsky also confusingly argues that Counts Three and Four fail to plead an "essential element" of securities fraud. See Def. Mem. at 4. He construes two arguments in support of this assertion: first, that Counts Three and Four do not allege a theory of insider trading,[3] and second, that Counts Three and Four do not sufficiently allege or identify the

---

[3] Korchevsky also argues that Counts Three and Four are deficient because the Government failed to identify the rule or regulation under which they are pleaded. See Def. Mot. to Dismiss at 8. However, the superseding indictment expressly alleges that Korchevsky violated Rule 10b-5, which it cites, along with the applicable statutes. See Superseding Indictment ¶¶ 51, 53.

materiality of the information contained in the stolen press releases.  As explained above, Counts

Three and Four appropriately track the essential elements of securities fraud delineated in Rule

10b-5.  Still, we address each of Korchevsky's arguments below.

      i.      **Rule 10b-5 and Korchevsky's Theory of Insider Trading**

Korchevsky complains that the superseding indictment is insufficient because it fails to

specify a theory of insider trading underlying the securities fraud charges.  See Def. Mem. at 9-

11.  Korchevsky cites no authority to suggest that such an allegation is required here, where the

Government has charged Korchevsky with "defrauding investors and potential investors" in the

Target Companies.  See Gov't Resp. in Opp. at 13.  Korchevsky also argues that the Government

has failed to show that he "had any fiduciary duty, or similar relationship of trust, to either the

companies or the newswire services."  Def. Mem. at 11.  He contends that without such a duty or

relationship, "there can be no misappropriation theory of insider trading and thus no violation of

Rule 10b-5."  Id. at 10-11 (citing United States v. Chestman, 947 F.2d 551, 566 (2d Cir. 1991),

for the proposition that "a person violates Rule 10b-5 when he misappropriates material

nonpublic information in breach of a fiduciary duty or similar relationship of trust and

confidence and uses that information in a securities transaction").  Korchevsky's reading of the

charges is distorted, as is his narrow interpretation of securities fraud.

The superseding indictment simply does not charge Korchevsky with insider trading.

Counts Three and Four charge that Korchevsky violated Rule 10b-5 through fraudulent trading

in securities as a corporate outsider.  Korchevsky owed no fiduciary duty to the Victim

Newswires or Target Companies.  He obtained the confidential information through theft.  The

Second Circuit advises that "[n]ovel or atypical methods [of securities fraud] should not provide

immunity from the securities laws."  United States v. Russo, 74 F.3d 1383, 1390 (2d Cir. 1996)

(noting that Section 10(b) and Rule 10b-5 are interpreted "expansively in accordance with congressional intent to minimize fraud in securities trading" and that "Section 10(b) enables the Commission to deal with new manipulative [or cunning] devices") (internal quotation marks and citations omitted); see also Wey, 2017 WL 237651, at *8 (explaining that, in light of the Supreme Court's "longstanding directive" that "Section 10(b) was designed as a catch-all clause to prevent fraudulent practices," the Government is free to bring charges under Section 10(b) and Rule 10b-5 "including not just garden type varieties of fraud but also unique forms of deception involving novel or atypical methods.") (internal quotation marks and citations omitted).

In SEC v. Dorozhko, 574 F.3d 42, 48 (2d Cir. 2009), the Second Circuit concluded that a breach of fiduciary duty is not necessary to prove the element of "deception" required by Section 10(b). The Court explained that "none of the Supreme Court opinions [on securities fraud]—much less the sum of [them]—establishes a fiduciary-duty requirement as an element of every violation of Section 10(b)." Id. at 48. Like Korchevsky, Dorozhko was a corporate outsider who traded in securities based upon information he obtained via computer hacking. See id. at 46. The SEC brought a securities fraud claim against him for "affirmatively misrepresent[ing] himself in order to gain access to material, nonpublic information, which he then used to trade" in contravention of the "affirmative obligation in commercial dealings not to mislead." Id. at 49. While the theory espoused by the SEC did not fall into "either of the two generally accepted theories of insider trading"—the traditional or misappropriation theories—the Second Circuit reasoned that it was "nonetheless based on a claim of fraud." Id. at 45, 50 (accepting SEC's interpretation of Chiarella v. United States, 445 U.S. 222 (1980), and its progeny, that "misrepresentations are fraudulent…").

12

In Korchevsky's case, as in <u>Dorozhko</u>, we agree that "depending on how the hacker gained access [to the stolen information], it seems to us entirely possible that computer hacking could be, by definition, a 'deceptive device or contrivance' that is prohibited by Section 10(b) and Rule 10b-5." <u>See id.</u> at 51. Whether the specific computer intrusion techniques relevant to Counts Three and Four can be characterized as "deceptive" is a question for another day, after an evidentiary record is created. <u>See id.</u> (explaining that while "misrepresenting one's identity in order to gain access to information that is otherwise off limits, and then stealing that information is plainly 'deceptive' within the ordinary meaning of the word...[it is unclear] that exploiting a weakness in an electronic code to gain unauthorized access is 'deceptive,' rather than being mere theft."). Still, given the extensive discovery the Government has provided to Defendants, the Court will await the Government's proof of the computer intrusion techniques used by the co-conspirators to assess the viability of the securities fraud charged. <u>See id.</u> (remanding for ruling on deceptiveness of computer hacking, given District Court's knowledge of facts pertaining to server infiltration); <u>see also</u> <u>Wey</u>, 2017 WL 237651, at *10 (noting that "[s]uch factual disputes are simply not matters that the Court may consider at this stage.").

For these reasons, the Court finds that Counts Three and Four are pleaded in accordance with Rule 7(c) and the U.S. Constitution, and we decline to dismiss them for failing to allege a theory of insider trading. In doing so, "we are mindful of the Supreme Court's oft-repeated instruction that Section 10(b) 'should be construed not technically and restrictively, but flexibly to effectuate its remedial purpose.'" <u>Dorozhko</u>, 574 F.3d at 49 (quoting <u>SEC v. Zanford</u>, 535 U.S. 813, 819 (2002)).

ii.     **Materiality of the Press Releases**

Korchevsky complains that Counts Three and Four fail to adequately allege the materiality of the information stolen by the Hackers.  Information is material if "there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [invest]." S.E.C. v. Suman, 684 F. Supp. 2d 378, 388 (S.D.N.Y. 2010), aff'd, 421 F. App'x 86 (2d Cir. 2011) (internal quotation marks and citations omitted).  Moreover, for information to be considered material "there must be a substantial likelihood that [its] disclosure [] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of [available] information." Id. (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)).

Despite the obvious success of the criminal endeavor in executing trades inside the window, Korchevsky nevertheless argues that the superseding indictment relies on a "general allegation of materiality" but offers "no factual allegations as to what information is alleged to have been the basis of the trades." Def. Mem. at 13.  However, not only does the superseding indictment clearly allege that Korchevsky and Khalupsky "engaged in a scheme whereby they executed and caused others to execute securities transactions in the Target companies based in whole or in part on material, nonpublic information [] that was fraudulently obtained through unauthorized attacks on the computer networks of the Victim Newswires," Superseding Indictment ¶ 27, it further explains that the stolen press releases contained confidential data relating to earnings, gross margins, revenues, and other "economically valuable" financial information, upon which, in advance of its public release, the Traders transacted, Superseding Indictment ¶¶ 29-30.

Korchevsky also maintains that "much of the information contained in the headlines…does not indicate material information." Def. Mem. at 12.  However, that a portion

14

of the press releases did not contain material information does not call into question the materiality of hundreds of press releases that allegedly formed the basis for Korchevsky's fraudulent trading and impressive profits. See Gov't Resp. in Opp. at 21; see also Hrg. Tr. (July 13, 2017), ECF No. 80, at 10-11.

The materiality of the information contained in the stolen press releases is also apparent due to the "importance attached to it by those who knew about it." See Suman, 684 F. Supp. at 388 (citations omitted). Albeit at great personal risk, the Hackers, Middlemen, and Traders broke into the Victim Newswires' servers to steal the information because it was "reasonably certain to have a substantial effect on the market price of the securit[ies]." See id. (internal quotation marks and citations omitted). And indeed, the financial success of the conspiracy undermines any claim that the stolen financial information was not material. As the Government aptly explains: "If this type of undisclosed sensitive information that contains economic valu[e] is not material, it is difficult to comprehend any information that would be considered material." Gov't Resp. in Opp. at 15. Materiality was sufficiently alleged.

### iii.    Conjunctive Pleading

Korchevsky next argues that Counts Three and Four should be dismissed because they are pleaded in the conjunctive (meaning that they charge a single crime committed by more than one specified means). See Fed. R. Crim. P. 7(c). "This claim is entirely without merit and requires little discussion." United States v. Mejia, 545 F.3d 179, 207 (2d Cir. 2008) (internal quotation marks and citations omitted). When a criminal statute or regulation, like Section 10(b) and Rule 10b-5, is written in the disjunctive (meaning that it can be violated in more than one way), "federal pleading requires...that [the] indictment charge [be] in the conjunctive to inform the accused fully of the charges." Id. Moreover, a conviction made upon a conjunctively

15

pleaded indictment "will be sustained if the evidence indicates that the statute was violated in any of the ways charged." Id.; see also United States v. Rioux, 97 F.3d 648, 661 (2d Cir. 1996).

The Government's pleading of parts "a" through "c" in the conjunctive is entirely proper,[4] despite the fact that they are listed disjunctively in the text of Rule 10b-5. And the Government may obtain a conviction on any one or more of these subsections. As a result, Korchevsky's motion to dismiss Counts Three and Four due to conjunctive pleading fails.

The Court finds that Counts Three and Four are properly pleaded and, accordingly, Korchevsky's motion to dismiss them for failure to plead securities fraud is denied.

### B. Count Five

Korchevsky argues that the Government has inadequately pleaded money laundering. His argument is threefold, and we address each part in turn.

First, Korchevsky suggests that, because the securities fraud charged in Counts Three and Four is inadequately pleaded, it cannot supply the "specified unlawful activity" required to bring a charge of money laundering under § 1956(a)(2)(A). See Superseding Indictment ¶ 55; see also Pirro, 212 F.3d at 93 ("[W]here an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense."). As explained, supra, Counts Three and Four adequately plead securities fraud. As result, the underlying offense required by § 1956(a)(2)(A) is identified and in no way impairs the validity of Count Five.

---

[4] The Superseding Indictment pleads securities fraud, contrary to Rule 10b-5, 17 C.F.R. § 240.10b-5, as follows: "(a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; **and** (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in the Target Companies..." Superseding Indictment ¶¶ 51, 53 (emphasis added).

16

Second, the Court finds no merit to Korchevsky's argument that "there are simply no facts alleged that in any way indicate that Mr. Korchevsky is appropriately charged in any money laundering activity." See Def. Mem. at 15.  Count Five, which alleges the essential elements of money laundering conspiracy under § 1956(a)(2)(A) and § 1956(a)(2)(B)(i), Superseding Indictment ¶ 55, requires no supplemental factual particularity to apprise Korchevsky of the charge.  Count Five satisfactorily tracks the language of the statute.  See Pirro, 212 F.3d at 100. It also "aquaint[s] [Korchevsky] with the specific crime with which he is charged" by listing the time period and location in which the alleged money laundering conspiracy took place.  United States v. Lamont, 236 F.2d 312, 315 (2d Cir. 1956); see also Superseding Indictment ¶ 55.  This pleading enables Korchevsky to prepare his defense and provides him the protections contemplated by Rule 7(c) and the U.S. Constitution.

Moreover, the superseding indictment incorporates and realleges the facts outlined in paragraphs one through forty-four, portions of which leave no doubt about the essence of the money laundering conspiracy charge.  See, e.g., Superseding Indictment ¶ 44 (noting that, in exchange for the MNPI stolen from the Victim Newswires, the Traders compensated the Hackers by wiring proceeds from their fraudulent trading to shell company accounts in Estonia).  The superseding indictment also explains that "through a series of intermediary transactions, Korchevsky took $400,000 out of the brokerage account he used to execute [a fraudulent trade] to purchase real estate in Glen Mills, Pennsylvania.  Later that year…[he] used the balance of assets in this same brokerage account to purchase additional real estate." Superseding Indictment ¶ 42.  There is no mystery here; the superseding indictment tells the story in considerable detail and Korchevsky is well informed of the charge and the allegations regarding his particular role in the conspiracy.  To be sure, the detail provided in support of Count Five

17

provides Korchevsky with more than adequate protection, and no further "descen[t] to particulars" is required." See Wey, 2017 WL 237651, at *5; Fed. R. Crim. P. 7(c). In any event, now is not the time "to weigh the sufficiency of evidence supporting" Count Five. See Kim, 2010 WL 1780959, at *2 ("[I]ndictments are not meant to serve an evidentiary function, but rather, to acquaint the defendant with the specific crime with which he is charged [and] allow him to prepare his defense") (internal quotation marks and citations omitted).

Finally, Korchevsky argues that the conjunctive pleading of Count Five, which charges him with money laundering conspiracy under 18 U.S.C. § 1956(a)(2)(A) *and* § 1956(a)(2)(B)(i), is improper. See Def. Mem. at 14-15. It is not. As discussed with respect to Counts Three and Four, supra, although the superseding indictment pleads money laundering conspiracy under two distinct subsections of § 1956, at trial, the Government may prove Count Five under either or both of them. See Mejia, 545 F.3d at 207.

Korchevsky's motion to dismiss as to Count Five is denied.

### 2. Korchevsky's Duplicity and Multiplicity Arguments

Korchevsky also seeks dismissal of Counts Two, Three, and Four as duplicitous and/or multiplicitous. He argues that Count Two, which charges conspiracy to commit securities fraud and computer intrusion, charges two distinct crimes and is therefore duplicitous. He argues that Counts Three and Four, which charge securities fraud, each combine separate and allegedly fraudulent securities transactions into a single count, and are therefore duplicitous. Korchevsky also argues, at the same time, that Counts Three and Four constitute a single crime and are multiplicitous. His motion to dismiss Counts Two, Three, and Four on these grounds is denied.

Fed. R. Crim. P. 8(a) requires that each crime charged in an indictment be contained in a separate count. If an indictment "combines two or more distinct crimes into one count in

contravention of [Rule 8(a)]…and [] the defendant is prejudiced thereby," it is impermissibly duplicitous. United States v. Bergstein, No. 16 CR. 746 (PKC), 2017 WL 1750392, at *2 (S.D.N.Y. May 3, 2017) (citing United States v. Sturdivant, 244 F.3d 71, 75 (2d Cir. 2001)). Furthermore, an objection to a duplicitous count "is properly invoked only when [the] challenged indictment affects [the duplicity] doctrine's underlying policy concerns." United States v. Olmeda, 461 F.3d 271, 281 (2d Cir. 2006) (summarizing United States v. Margiotta, 646 F.2d 729, 732-33 (2d Cir. 1981)); see also Wey, 2017 WL 237651, at *3 ("to be more than an exercise in mere formalism, [the duplicity doctrine] must be invoked only when an indictment affects the policy considerations that underlie the doctrine") (internal quotation marks and citations omitted). Key policy concerns that arise in the context of a duplicitous charge are the "risk that jurors may not have been unanimous as to any one of the crimes charged," the "uncertainty of [] [a] general verdict of guilty," in which a jury may find a defendant guilty as to one crime but not another, the risk to the defendant of inadequate notice of the charges and of double jeopardy, and lack of an adequate basis for sentencing. Margiotta, 646 F.2d at 733 (citing United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)).

A conspiracy charge "presents unique issues" in the duplicity context, "because a single agreement may encompass multiple illegal objects." Bergstein, 2017 WL 1750392, at * 2 (internal quotation marks and citations omitted) (noting that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme."). The law in this Circuit is clear, as it has been for "at least seventy years," that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous." Vilar, 729 F.3d at 79 (internal quotation marks and citations omitted). This is true because "[t]he conspiracy is the crime, and that is one, however

19

diverse its objects." Id. at 79.  One conspiracy "is not transformed into multiple conspiracies" simply because it involves "two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance," United States v. Maldonado–Rivera, 922 F.2d 934, 963 (2d Cir. 1990) (citations omitted), or pursues "multiple illegal objects," United States v. Rigas, 281 F. Supp. 3d 660, 665 (S.D.N.Y. 2003) (citations omitted); see also Rajarantnam, 2014 WL 1554078, at *4 (the Government is "generally given wide latitude in charging a conspiracy," and even "[b]oilerplate allegations of a single conspiracy [can] survive" a motion to dismiss) (internal quotation marks and citations omitted).

### A. Count Two

Count Two charges Korchevsky with a dual-object conspiracy.  The conspiracy was intended (1) to commit computer intrusions under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2), 1030(b), 1030(c)(2)(A), and 1030(c)(2)(B), and (2) to commit securities fraud under Rule 10b-5 and 15 U.S.C. §§ 78j(b) and 78ff.  On its face, the superseding indictment presents a unified scheme—involving extensive coordination among the Hackers, Middlemen, and Traders—to hack into the servers of the Victim Newswires, steal pre-publication press releases, and trade upon MNPI that the releases contained.

Korchevsky argues that the two crimes charged under the conspiracy umbrella in Count Two are "entirely different." Def. Mem. at 19.  Count Two, he says, "does not comprise one conspiracy with two different goals; it is not a conspiracy to commit securities fraud by means of a computer intrusion, nor is it a conspiracy to commit computer intrusion by means of securities fraud." Id.  Korchevsky misconstrues both the facts and the well-established authorities. Certainly, the dual-object conspiracy charged in Count Two involved multiple steps, it spanned over four years, and it involved numerous participants with varying roles and degrees of

involvement. See Olmeda, 461 F.3d at 281 (citing cases); see also Wey, 2017 WL 237651, at *4 (finding that "undeniable commonalities in purpose and execution across [] alleged offenses" supported conclusion that they were part of "one integrated fraudulent scheme."). The single conspiracy charged in Count Two did not morph into separate conspiracies "by virtue of the fact that it [involved] two or more phases or spheres of operation." See Maldonado-Rivera, 922 F.2d at 963 (citations omitted); see also United States v. Williams, 705 F.2d 603, 624 (2d Cir. 1983) (noting that "allegation in a single count of a conspiracy to commit several crimes is not duplicitious," and that "this principle has been specifically applied to a single count charging conspiracy to defraud the United States and to commit substantive offenses"). Rather, the superseding indictment makes clear that the Hackers needed the Middlemen and Traders to garner financial rewards from their theft. Quite obviously, the Traders relied on the Hackers and the material, non-public information they misappropriated to gain a critical trading advantage in the public markets.

Furthermore, the superseding indictment's detailed fact section, Superseding Indictment ¶¶ 27-44, and list of six overt acts allegedly taken in furtherance of the conspiracy, id. ¶ 49(a)-(f), tell a story of one scheme with one common goal. Because Count Two also realleges and incorporates these facts, it provides "an amplified description of the alleged conspiracy." See United States v. Greebel, No. 15 CR. 637 (KAM), 2017 WL 3610570, at *4 (E.D.N.Y. Aug. 4, 2017) (where "allegations of the preceding paragraphs [were] read in combination with the charging paragraphs, the indictment allege[d] more than sufficient detail to survive a motion to dismiss.") (citations omitted). Korchevsky has also been given "adequate notice" of the charges against him in Count Two, and is "protect[ed] against double jeopardy in a subsequent prosecution." Wey, 2017 WL 237651, at *3, 22 (internal quotation marks and citations omitted).

As a result, the Court finds that the dual-object conspiracy in Count Two is appropriately pleaded.

Finally, Korchevsky argues that Count Two of the superseding indictment improperly alleges a conspiracy to commit a conspiracy. See Def. Mem. at 20. This glib argument is meritless and misapprehends the text of the Superseding Indictment. In reality, Count Two describes a dual-object conspiracy brought pursuant to the offense clause 18 U.S.C. § 371, which "governs a conspiracy to commit a specific offense, defined elsewhere in the federal criminal code." See United States v. Bilzerian, 926 F.2d 1285, 1301 (2d Cir. 1991) (citations omitted). Count Two charges a conspiracy to commit computer intrusion, in violation of 18 U.S.C. § 1030, and to commit securities fraud, in violation of Section 10(b) and Rule 10b-5. Superseding Indictment ¶¶ 47-49. It is true that, in charging the computer intrusion prong of the conspiracy, the Superseding Indictment cited the conspiracy prong of § 1030—§ 1030(b). And while it is possible that Count Two perhaps could have been charged differently, without reference to § 1030(b), the mere citation to § 1030(b) does not suggest that the Government has charged a conspiracy to commit a conspiracy. Nor do common sense and reason suggest that "the jury [will] be asked to elect between the two crimes charged." See Def. Mem. at 20.

Because Count Two does not run afoul of Rule 8(a), we do not need to evaluate any possible prejudice to Korchevsky from its pleading. See Wey, 2017 WL 237651 at *5 (concluding that to the extent defendant raised "concerns that the Government's charging decisions may increase the risk of ambiguity in any eventual jury verdict, the parties [would] have a full opportunity to ameliorate any such risk through their proposed jury instructions and verdict forms"). However, to the extent that Korchevksy is concerned that the Government's charging decisions will prejudice him by raising questions as to jury unanimity, "these concerns

22

can be addressed by an appropriate jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction."[5] Bergstein, 2017 WL 1750392, at *3 (internal quotation marks and citations omitted); see also Rigas, 281 F. Supp. 2d at 665 (it was the "jury's task to decide the further factual question of whether a single conspiracy or multiple conspiracies existed."); see also United States v. Jones, 482 F.3d 60, 72 (2d Cir. 2006) (citing cases) ("whether [] evidence shows a single conspiracy or more than one conspiracy is often not determinable as a matter of law or subject to bright-line formulation").

Because it is well-established that the Government may charge dual-object conspiracies in a single count of an indictment, Korchevsky's arguments to the contrary are unavailing.

---

[5] Korchevsky poses two additional, conclusory arguments as to the duplicitous nature of Count Two, both of which have no merit:

First, while it is true that the superseding indictment contains no substantive computer intrusion count, Korchevsky's fear that the jury will therefore be unable to "judge the sufficiency of the evidence presented for conviction" on the conspiracy charged in Count Two is unfounded. See Def. Mot. to Dismiss at 20. Korchevsky's reliance on United States v. Williams, 705 F.2d 603, 624 (2d Cir. 1983), is also misplaced. See id. (suggesting that some courts look to jury verdicts "for the underlying substantive counts to explain why a § 371 conspiracy charging both fraud and substantive offenses can withstand a motion to dismiss."). Count Two does not simply allege a conspiracy to defraud the United States in some "unspecified way." See Williams, 705 F.2d at 624. Rather, paragraph 48 of the superseding indictment clearly identifies and tracks the language and essential elements of both the securities fraud (Rule 10b-5) and computer intrusion (18 U.S.C. 1030(a)(2), 1030(b), 1030(c)(2)(A), and 1030(c)(2)(B)) objects of the conspiracy. The superseding indictment is also replete with facts underlying the computer intrusion prong. Superseding Indictment ¶¶ 27-28, 31-34. As a result, there is no risk of the jury convicting Korchevsky of Count Two "without either an allegation or proof of the essential nature of the fraud." See Williams, 705 F.2d at 624.

Second, Korchevsky attempts to construe the pleading of Count Two as infirm under "Wharton's Rule." See Def. Mot. to Dismiss at 19-20. Wharton's Rule is a criminal law doctrine that provides that: "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." United States v. Bommarito, 524 F.2d 140, 143 (2d Cir. 1975) (internal quotation marks and citations omitted). Wharton's Rule is inapplicable here, where Defendants are charged with a dual-object conspiracy to commit securities fraud and computer intrusion, pursuant to 18 U.S.C. § 371. Both securities fraud and computer intrusion are crimes that can be committed by one person alone, unlike the classic examples of a Wharton's Rule offense. See id. at 145 n.3 (noting that "Wharton's Rule [] has been primarily applied in[] cases involving alleged conspiracies to commit offenses such as adultery, incest, bigamy, and dueling") (internal quotation marks and citations omitted). The mere citation to § 1030(b), the conspiracy prong of the computer intrusion statute, alongside citations to a substantive computer intrusion prong, § 1030(a)(2), and to 18 U.S.C. § 371, does not somehow render Count Two infirm.

### B. Counts Three and Four

Korchevsky next launches a curious attack on Counts Three and Four, urging the Court to find that they are "either duplicitous or multiplicitous" and to dismiss them. See Def. Mem. at 17, 21. However, he only provides arguments supporting their duplicity.[6] Because the Court finds that Counts Three and Four are neither duplicitious nor multiplicitous, Korchevsky's motion is denied.

With respect to duplicity, Korchevsky maintains that it would somehow be unfair to try him in only two counts "for an entire 'scheme' encompassing numerous transactions" and that the Government could "offer minimal evidence, perhaps as little as one trade in each count" and still convict him of hundreds of trades. Id. at 21-22; but see Wey, 2017 WL 237651, at *4 ("Indeed, the applicable securities fraud provisions…expressly criminalize 'scheme[s] to defraud.'"); see also United States v. Moloney, 287 F.3d 236, 240 (2d Cir. 2002), abrogated on other grounds by United States v. Cotton, 535 U.S. 625 (2002) (referring, in the context of a

---

[6] An indictment is multiplicitous, and violates the Double Jeopardy Clause, when "a single offense is alleged in more than one count" and "the charged offenses are the same in fact and in law." United States v. Jones, 482 F.3d 60, 72 (2d Cir. 2006) (internal quotation marks and citations omitted). While "multiplicity principles do not require, in every case, that the separate counts of an indictment charge separate and discrete securities fraud schemes…fraudulent transactions involving different securities, even if made with the intent of furthering a single overall conspiracy, may establish the basis for separate counts of an indictment under Section 10(b) and Rule 10b–5." United States v. Rigas, 281 F. Supp. 2d 660, 667 (S.D.N.Y. 2003). Here, "even on its face, the Indictment is not clearly multiplicitous." United States v. Walsh, 194 F.3d 37, 46 (2d Cir. 1999). While Counts Three and Four each charge Korchevsky with securities fraud, the facts and law that underlie these two counts are distinct. They address securities fraud that occurred at separate Victim Newswires, and that was conducted using different computer intrusion techniques. The hack of the PR Newswire, alleged in Count Three, involved the use of malware, by which "the Hackers sent unauthorized PHP commands to the PR Newswire servers…[and] access[ed] press releases maintained on PR Newswire's network." Superseding Indictment ¶ 32. The Marketwired Hack, meanwhile, involved a "series of SQL injection attacks" into Marketwired's computer network, which allowed the Hackers to steal over 900 press releases. Superseding Indictment ¶ 34. The offense charged in Count Three is *not* the same as the offense charged in Count Four, as each "requires proof of a fact that the other does not." See United States v. Regensberg, 604 F. Supp. 2d 625, 632 (S.D.N.Y. 2009) (citing Blockburger v. United States, 284 U.S. 299 (1932)). Consequently, Counts Three and Four are not impermissibly multiplicitous.

money laundering charge, to the "Second Circuit's general presumption in favor of allowing a common scheme to be treated as part of a single offense."). To remedy this supposed infirmity, he tenders the surprising suggestion that the Government employ a "transactional approach," whereby *each trade* charged as securities fraud would be separated into a distinct count. See Def. Mem. at 21. Although the Government did not address this argument, the Court is unpersuaded.

Korchevsky argues that "[a] transactional approach is particularly pertinent concerning the allegations of securities fraud against [him], since to prove him guilty the government must present evidence of MNPI that led to him trading in some way." Def. Mem. at 21. However, Korchevsky confuses the purpose of the transactional approach, which is typically employed to defeat a complaint of multiplicity, not duplicity. See, e.g. Rigas, 281 F. Supp. 2d at 667. The transactional approach recognizes that "each transaction in a securities fraud case constitutes a separate offense," United States v. Dioguardi, 492 F.2d 70, 83 (2d Cir. 1974), and permits the Government to charge a criminal defendant with separate counts of securities fraud for separate fraudulent securities transactions, even where those transactions are part of one conspiracy, Rigas, 281 F. Supp. 2d at 667.

Regardless, the permissive wording in cases addressing the transactional approach makes clear that the Government has significant discretion in how it formulates securities fraud counts in criminal indictments. See Rigas, 281 F. Supp. 2d at 667 (citing United States v. Langford, 946 F.2d 798, 803 (11th Cir. 1991)) ("The allowable unit of prosecution under section 78j(b) is [] the use of a manipulative device or contrivance, which, as clarified by the SEC in Rule 10b-5, *does not have to be* the complete scheme to defraud rather, it can be any false statement of material fact in connection with a discrete purchase or sale of a security.") (emphasis added); see

also United States v. Regensberg, 604 F. Supp. 2d 625, 630 (S.D.N.Y. 2009) (agreeing with Rigas that "[t]he inclusion [in Rule 10b-5] of acts other than a "scheme" to defraud indicates that Congress intended to allow for the permissible unit of prosecution for securities fraud to include 'fraudulent transactions involving different securities, even if made with the intent of furthering a single overall conspiracy'"). While the Government may charge securities fraud in multiple individual counts without rendering the indictment multiplicitous, the law in this Circuit does not require it to do so. See id.

In this case, the Government exercised its discretion appropriately in grouping its securities fraud charges into two distinct units of prosecution—the scheme to hack into PR Newswire (Count Three) and the scheme to hack into Marketwired (Count Four). See Regensberg, 604 F. Supp. 2d at 630 (finding that the government was permitted to charge defendant with two counts of securities fraud "based on two separate and distinct groups of transactions involving different securities," despite defendant's argument that he should be charged in only one count based on existence of one scheme to defraud).

Furthermore, the Government has not only provided satisfactory specificity in the superseding indictment, but has also given Korchevsky voluminous discovery, including a spreadsheet containing hundreds of securities transactions allegedly made based upon MNPI from the stolen press releases. See Gov't Resp. in Opp. at 21; Stavroulakis, 952 F.2d at 693 (citing United States v. McClean, 528 F.2d 1250, 1257 (2d Cir. 1976)) ("the underlying concerns of proper pleading—notice of the charge to be met and protection against double jeopardy—may

26

be further promoted by a bill of particulars or pre-trial discovery").[7] Combined with the satisfactory pleading of Counts Three and Four, this discovery more than adequately informs Korchevsky of the securities fraud charges and enables him to prepare his defense and "plead an acquittal or conviction in bar of future prosecutions." See United States v. Hamling, 418 U.S. 87, 117 (1974); see also Fed. R. Crim. P. 8(a). Korchevsky presents no colorable suggestion of prejudice due to the pleading of securities fraud in only two counts. See Olmeda, 461 F.3d at 28 (noting that where acts "charged in a single count...could be characterized as part of a single continuing scheme," duplicity "may actually inure to a defendant's benefit by limiting the maximum penalties he might face if [] charged and convicted on separate counts for [] a single scheme.") (citations omitted).

For these reasons, the Court finds that Counts Three and Four are not impermissibly duplicitous or multiplicitous, and denies Korchevsky's motion to dismiss them.

3. **Korchevsky's Motion to Strike Surplusage From the Indictment**

Korchevsky argues that the superseding indictment contains language that is both irrelevant and unduly prejudicial to him. He requests that the Court strike the following words

---

[7] Where, as here, "the government has made sufficient disclosures concerning its evidence and witnesses by other means," a bill of particulars is not required. Walsh, 194 F.3d at 47; see also United States v. McClean, 528 F.2d 1250, 1257 (2d Cir.1976) ("[r]ecognizing that particular facts needed in particular cases are obtainable by bills of particulars or discovery, we have repeatedly refused, in the absence of any showing of prejudice, to dismiss similarly-couched charges for lack of specificity."); See also United States v. Caban, No. 17 CR. 426, 2017 WL 4990653, at *3 (S.D.N.Y. Oct. 30, 2017) ("A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotation marks and citations omitted). In light of the extensive discovery the Government has provided to Korchevsky and his counsel, as well as the Government's ongoing cooperation with respect to discovery in this case, and as indicated at the hearing held before the Court on July 13, 2017, the Court finds a bill of particulars unnecessary to protect Korchevsky's rights under Fed. R. Crim. P. 7(c) and the U.S. Constitution, or to enable him to prepare his defense.

and phrases: "Targeted Entities," "Victim Newswires," "Target companies," "SQL Injection

Attacks," "Brute Force Attacks," "Hacking," and "The Hackers."  The Court declines to do so.

Motions to strike surplusage from an indictment are subject to an "exacting standard."

See United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990); see also Fed. R, Crim P. 7(d).

They may be granted "only where the challenged allegations are not relevant to the crime

charged and are inflammatory and prejudicial."  United States v. Mulder, 273 F.3d 91, 99-100

(2d Cir. 2001) (internal quotation marks and citations omitted); see also United States v.

DePalma, 461 F. Supp. 778, 797 (S.D.N.Y. 1978) ("[I]f evidence of the allegation is admissible

and relevant to the charge, then regardless of how prejudicial the language is, it may not be

stricken.").

The language identified by Korchevsky is undoubtedly relevant to the crimes charged

and, more specifically, to the computer intrusion tactics allegedly used by the Hackers.  See

United States v. Ferguson, 478 F. Supp. 2d 220, 235 (D. Conn. 2007) ("District courts within this

circuit have interpreted relevance to include language that explains the crimes charged.").  Many

of the terms Korchevsky identifies are important for complete explanation of the crimes charged,

and are used in the common parlance of computer intrusions.[8]

_____

[8] See, e.g., U.S. Dep't of Commerce, Nat'l Instit. of Standards and Tech., Glossary of Key Information Security Terms, NISTIR 7298 Revision 2, at 23, 83 (May 2013), available at http://nvlpubs.nist.gov/nistpubs/ir/2013/NIST.IR.7298r2.pdf (defining "Hacker" and "Brute Force Password Attack"); Charles Doyle, Cybercrime: An Overview of 18 U.S.C. 1030 and Related Federal Criminal Laws, Congressional Research Service (October 15, 2014), available at https://fas.org/sgp/crs/misc/97-1025.pdf (using the terms "hack" and "hacker" throughout); Jack Maidment, 'Brute force' cyber attack on Parliament compromised up to 90 email accounts, The Telegraph (June 25, 2017), available at http://www.telegraph.co.uk/news/2017/06/25/brute-force-cyber-attack-parliament-compromised-90-email-accounts/ (using the term "brute force"); Kim Zetter, Hacker Lexicon: SQL Injections, An Everyday Hacker's Favorite Attack, Wired (May 11, 2016), available at https://www.wired.com/2016/05/hacker-lexicon-sql-injections-everyday-hackers-favorite-attack/ (using the term "SQL injections").

Nevertheless, to the extent it exists, any prejudice to Korchevsky from inclusion of this language in the superseding indictment is certainly outweighed by the Government's interest in accurately characterizing the nuanced, highly technical computer intrusion activities at issue for the jury.  See United States v. Desantis, 802 F. Supp. 794, 800 (E.D.N.Y. 1992) (noting that, in evaluating claims of surplusage, "[c]onsideration has also been given to the balance to be struck between probative value and prejudice (Rules 403 and 404(b), Fed. R. Evid.)").  Accordingly, Korchevsky's motion to strike surplusage from the superseding indictment is denied.

CONCLUSION

The Court finds that the superseding indictment is constitutionally sufficient and meets the pleading requirements set forth in the Federal Rules of Criminal Procedure.  Korchevsky's motions are denied.

SO ORDERED.

Dated: Brooklyn, New York
February 16, 2018

s/ RJD

RAYMOND J. DEARIE
UNITED STATES DISTRICT JUDGE