```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
     -------------------------------x
 3                                   :
     UNITED STATES OF AMERICA,       :      15-CR-381 (RJD)
 4                                   :
               Plaintiff,            :      United States Courthouse
 5                                   :      Brooklyn, New York
               -against-            :
 6                                   :      July 13, 2017
     VITALY KORCHEVSKY,              :      2:45 p.m.
 7                                   :
               Defendant.            :
 8                                   :
     -------------------------------x
 9
          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
10             BEFORE THE HONORABLE RAYMOND J. DEARIE
               UNITED STATES SENIOR DISTRICT JUDGE
11
     APPEARANCES
12
     For the Plaintiff:      BRIDGET M. ROHDE
13                           UNITED STATES ATTORNEY
                                271 Cadman Plaza East
14                              Brooklyn, New York 11201

15                           BY:  RICHARD TUCKER,
                                  Assistant United States Attorney
16                                UNA DEAN,
                                  Assistant United States Attorney
17                                WHITMAN KNAPP,
                                  Assistant United States Attorney
18
     For the Defendant:      SULLIVAN BRILL, LLP
19                              115 Broadway - 17th Floor
                                New York, New York 10006
20
                             BY:  STEVEN BRILL, ESQ.
21                                JAMES HEALY, ESQ.

22   Court Reporter:         LINDA A. MARINO, RPR
                             225 Cadman Plaza East
23                           Brooklyn, NY 10021
                             (718) 613-2484
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

Case 1:15-cr-00381-RJD-RER Document 25991 Filed 05/21/18 Page 2 of 32 PageID #: 11525

 1          THE COURTROOM DEPUTY:  Can I ask the attorneys

 2   please to come up to the podium?

 3          We are on this afternoon for a status conference.

 4   This is USA v. Vitaly Korchevsky, Docket No. 15-CR-381.

 5   Mr. Korchevsky is Defendant No. 1.

 6          Mr. Korchevsky, I'm going to ask you please to come

 7   up to the podium with your attorneys.

 8          Can I ask the attorneys please to note appearance,

 9   beginning with counsel for Government?

10          MR. TUCKER:  Rich Tucker, Una Dean, and Whit Knapp

11   for the United States.  Good afternoon, your Honor.

12          MR. BRILL:  Good afternoon.  Sullivan & Brill by

13   Steven Brill and James Healy.

14          How are you, your Honor?

15          THE COURT:  Good afternoon, everyone.

16          Well, I was anxious to see you.  After receiving a

17   motion for a bill of particulars, I didn't want that matter to

18   linger.  I must say I was somewhat taken aback by it, number

19   one.  It is rather unusual, in this district at least, to

20   engage in that kind of formality.

21          Secondly, about a year ago, Mr. Brill, you assured

22   me you and the Government were working things out and unless

23   and until things broke down, I would not be hearing from you

24   on the subject.  Now almost a year has passed since then.

25          And thirdly, I also understood the problem in this

1  case was not a lack of information but too much information.

2  And I think, with all due respect to counsel, without seeming

3  to criticize either side, I think, cutting through all of

4  this, what this is about is not so much particulars but for

5  help.

6          And who could blame you?  As I said, I'm not being

7  critical.  Much of what you apparently requested in this

8  rather extraordinary document is on its face evidentiary.  And

9  I could just deny it, send you packing, and have at it.  But

10  I'm conscious of the fact that counsel has a formidable task

11  sifting through all this information and developing a focus

12  for trial and needs some direction; hence, this application.

13  And I'm sympathetic to it as much as I was surprised by it.

14          So, I want to know what's going on and why the

15  Government doesn't, if they haven't, responded with a certain

16  sensitivity to the challenges that confront defense counsel in

17  a case that is on its face simple -- Dolan information,

18  provided to middlemen, relayed to traders -- but, yet, in

19  terms of preparation, it is an imposing task no doubt by

20  virtue of the sheer volume of information you're dealing with.

21          So, let me ask a couple of questions.  What is at

22  the heart of this?  What do you need that you don't have?

23          For example, press releases were misappropriated.

24  Have we identified those specific press releases?

25          MR. TUCKER:  Yes, your Honor.  Let me just take a

1   step back, Judge.

2           THE COURT:  Let me ask my question.  I don't cut

3   people short, I'll give you whatever time you like.

4           MR. TUCKER:  I apologize, sir.

5           THE COURT:  Have we identified those releases?

6           MR. TUCKER:  We've identified the transactions,

7   which I think is actually even more important.  And then

8   there's a document that's been produced to the defense that

9   associates the press releases with transactions, so I would

10  say yes.

11          THE COURT:  If you don't have the press release

12  itself, which is somewhat surprising, how does a lawyer decide

13  whether or not the press release itself contains material

14  private information, material nonpublic?

15          MR. TUCKER:  The press releases themselves are

16  available online, Judge.  They're available to everybody.  The

17  Government doesn't have, like, a single repository of where

18  all the press releases sit.  There isn't a folder at my desk

19  that contains all those press releases printed out.

20          But we have the transactions that we think are

21  suspicious, and those are identified.  And then the associated

22  press releases are identified with those transactions.

23          THE COURT:  And those press releases are readily

24  available online to this day?

25          MR. TUCKER:  Yes, Judge.  You can Google them.

1      THE COURT:  Have you shared that information with

2  your colleague over here?

3      MR. TUCKER:  Yes, Judge.

4      MR. BRILL:  I guess I respectfully dispute what the

5  Government is saying.  I don't -- they've given us the

6  transactions that they alleged to be improper.  That's true.

7      THE COURT:  Just so that I'm sure I understand, the

8  transactions that took place during this -- I forget what the

9  expression is -- "window," which is a fairly narrow window,

10  because as I read the information, and, let's face it, this

11  indictment is hardly a bare bones indictment, but as I read

12  the information, the release was provided to the company,

13  victim company, and within a day, sometimes even less than a

14  day, it was issued.  So, we have a very narrow window.

15      And I assume, then, that the transactions to which

16  you allude occurred within that window.

17      MR. TUCKER:  Yes, your Honor.

18      THE COURT:  Okay.

19      MR. BRILL:  So, we were given a spreadsheet that

20  alleges those improper trades that your Honor just described.

21  That's also part of one of our requests, but I won't -- we can

22  put that to the side.

23      THE COURT:  Did you draft this document?

24      MR. BRILL:  It was a joint effort.  Only if I know

25  if you like the document.

1         MR. HEALY:  He wants to know if you like it before

2 he says that.

3         MR. BRILL:  Your Honor's question, more to the

4 point, I'm not exactly sure the Government has turned over the

5 press releases specifically as they pertain to those number of

6 alleged improper trades.  We have been given, it is true,

7 spreadsheets of thousands of -- not press releases, but the

8 idea that press releases were drafted, were disseminated.  And

9 then we can go to those spreadsheets and say let's figure out

10 the date and then we can --

11         THE COURT:  I assume the date is on the spreadsheet.

12         MR. BRILL:  Yes, dates for sure.

13         But more to the point, your Honor, which is the

14 basis of our request, which is -- and I think your Honor

15 alluded to this a little bit -- the press releases are pretty

16 critical.  The press releases themselves.

17         THE COURT:  They're available.

18         MR. BRILL:  If that's what the Government is saying,

19 for us to take a critical piece of their evidence, which is

20 here's what we believe was stolen, these are allegedly stolen

21 proceeds, in a sense, for lack of a better term, and then the

22 materiality within those stolen press releases were then known

23 before they were public and traded on, it seems very odd to me

24 that if that's the Government's case in theory, that the

25 actual stolen proceeds or any facsimile thereof are not given

 1    to us and we're told you go find the stolen evidence and you

 2    take a look at it, it seems odd to me.  And certainly time

 3    consuming.

 4          And, so, the basis of our question to them --

 5          THE COURT:  Who is going to spend the time, you or

 6    the Government?

 7          But let me ask the Government a question:  Are you

 8    going to introduce these releases at trial?

 9          MR. TUCKER:  I think we'll probably introduce some

10    of them; not that many, but some of them, sure.

11          THE COURT:  Have you decided which ones?

12          MR. TUCKER:  No.

13          THE COURT:  But when you do, you'll provide them to

14    counsel?

15          MR. TUCKER:  They'll be trial exhibits, Judge.  Of

16    course.

17          THE COURT:  I don't mean at trial.

18          MR. TUCKER:  No, I'm -- I apologize, Judge.

19          THE COURT:  Do you understand where I am here?  I'm

20    sympathetic to this, and I think the motion for a bill of

21    particulars could be denied outright with a few exceptions.

22    But I'm sympathetic nonetheless that, given the discretion I

23    have to grant an order for a bill of particulars, but, more

24    importantly, given the need to preside over a fair and

25    reasonable proceeding, I need your cooperation.

1   MR. TUCKER:  Judge, I completely agree.  Look, I

2   want to be clear -- I hope it's coming across -- the

3   Government is also sympathetic.  When we started our

4   discovery -- just boiling this down to the simplest ideas --

5   we have these massive collections of trading data, massive

6   collections of forensic data, which were disclosed two years

7   ago.  Defense counsel has made requests.

8          What we have done is we have distilled these massive

9   amounts of data into work product that, frankly, would be

10  trial exhibits and given them to the defense months, sometimes

11  more than months in advance, just to help the process along.

12         We were surprised as well by the bill of particulars

13  because we talk to defense counsel all the time and we provide

14  them with work product all the time.  We provided them with a

15  list of everything we've turned over in discovery so that

16  they'd have an index.  We provided them with this table of all

17  these suspicious trades months in advance.  And the response

18  typically seems like:  Is this it?  Are you committed to this?

19  Is this the end?

20         And that puts us in a difficult spot because by

21  providing this intermediate work product to help the process

22  along to protect the trial date, now we're risking being

23  prejudiced and committed to something far in advance of trial.

24         THE COURT:  No, they can't have it both ways.  You,

25  as lawyers, can work that sort of thing out.  It's not going

 1   to be an application like a civil case; motion to preclude,

 2   they didn't turn over --

 3          MR. BRILL:  I might disagree with the premise, your

 4   Honor.  It's as if the Government has done us a favor by

 5   providing the spreadsheet which shows what Mr. Korchevsky did

 6   illegally.  It's the case.  So, I don't think what we've asked

 7   for and the fact that they've made a spreadsheet of the

 8   evidence that they claim was improper, inculpatory, is asking

 9   for anything totally in outer space.  So, I disagree with the

10   premise that they have gone beyond.  We've gotten what they've

11   given us and we believe we're deserving of this.

12          If this was an insider trading case, your Honor, and

13   not like ours, but like one company, two companies, where you

14   see those types of cases, everything about the trades at issue

15   would be turned over.  That would be the critical piece of the

16   Government's case.  So, this case is really no different

17   except, for better or worse, we have 750 trades that are

18   alleged.  So, why shouldn't we be given the same courtesy --

19   not "courtesy," but be given the information of each of those

20   trades if they're saying that it's improper; similarly, if

21   this was one company and someone just traded and made one

22   trade --

23          THE COURT:  Now I'm confused.  I thought they were

24   giving the trades.

25          MR. TUCKER:  Yes, Judge.

```
 1              MR. BRILL:  I guess I'm just responding to the idea
 2     that they've given us -- we're back to the press releases.
 3     We're asking for the press releases that correspond to those
 4     750 trades.  You asked about press releases; we don't have
 5     that.
 6              THE COURT:  Apparently, they don't have it either.
 7              MS. DEAN:  We don't have them, your Honor.  We
 8     anticipate -- we have an expert that we've noticed who is
 9     doing an analysis of all of the alleged improper trading and
10     we are endeavoring to collect the press releases that underlie
11     these trades.  We do not currently have them, but we
12     represented to Mr. Brill before your Honor came out on the
13     bench that if and when we do collect them, that we will turn
14     them over immediately.  But we don't have a folder.
15              THE COURT:  This case has been pending now for two
16     years.  The heart of the matter is these stolen press
17     releases.  And you don't have them?
18              MR. TUCKER:  Well, Judge, just to be clear, hundreds
19     of thousands of press releases were stolen.
20              THE COURT:  But the companies are two or three or
21     four, right?
22              MR. TUCKER:  Right.
23              THE COURT:  Hundreds of thousands of press releases.
24              MR. TUCKER:  I don't think Mr. Brill wants a hundred
25     thousand press releases.  He wants the 750 --
```

```
1          MS. DEAN:  He actually does have them; they're on a

2     computer.  But he's saying he wants them identified, the 750

3     specifically identified.  That is what we do not have

4     identified for him.

5          THE COURT:  Say that again.

6          MS. DEAN:  He has a computer that has the stolen

7     press releases on it, but he would have to go into the

8     computer and look at them and he doesn't necessarily want all

9     of the hundreds of thousands of press releases that are found

10    on the computer.

11         THE COURT:  He wants the ones you're going to use at

12    trial.

13         MS. DEAN:  Right.  So, we are attempting to gather

14    that for him, but we told him we do not currently have that

15    contained universe of press releases.  But we are not holding

16    anything about.

17         MR. BRILL:  I just want to try to focus.  If they're

18    saying that there are press releases on a server that I have

19    in my possession, then that's an answer to my question, which

20    is -- so, identify that for us.  So, they're the press

21    release.  Okay, I can live with that.  I don't recall knowing

22    that until now or until we spoke.

23         So, a lot about this bill of particulars, your

24    Honor -- and I'm very mindful, I don't want to waste anybody's

25    time.  I understand the bill of particulars is very frowned
```

1 upon and it usually can be worked out. I get all that. But a

2 lot of this is finding a needle in the haystack, a lot of our

3 requests. So, if --

4       THE COURT: That's what I said. It's not a bill of

5 particulars, it's you need some help.

6       MR. BRILL: Okay. But then I hate to say this, but

7 your Honor then says well, he doesn't -- Mr. Brill doesn't

8 want all hundred thousand press releases. Okay, well, I don't

9 know if that's the case because -- I'll tell you why, your

10 Honor.

11       Just to give the Court an understanding of what this

12 case is really about, they're claiming that all of those press

13 release were stolen by hackers. And I don't know what was

14 available to the co-defendants. I'm trying to find out what

15 they're saying was available to Mr. Korchevsky, if any. But

16 the point is, if there were 100,000 available to

17 co-defendants, your Honor, but only 750 trades were made or

18 1,000 trades were made, and it seems to me -- and that perhaps

19 the hundred thousand is relevant and we should be given.

20       You know, the Government can say that's ridiculous,

21 but it's their case. They're saying a hundred thousand press

22 releases stolen. So, why were the ones that were stolen --

23 only certain ones were used, and why shouldn't we be able to

24 evaluate that and defend the case accordingly?

25       So, you're hearing the problems with the

Case 1:15-cr-00588-RJD-RER Document 259 Filed 05/25/17 Page 13 of 32 PageID #: 1536

1  preparation, which is, okay, something was stolen; 100,000 of

2  them.  They may be relevant to figure out a theory of the

3  defense, but we don't have them and we don't even have the

4  ones that correlate to the improper trades.

5       THE COURT:  The latter group you are going to have.

6  And if I understand Ms. Dean's comment, you'll have all press

7  releases the Government now has in its possession.

8       MS. DEAN:  That's correct, your Honor.  So when it's

9  too much, we're told it's too much.

10       THE COURT:  The thing you do is to meet periodically

11  and to have this kind of exchange --

12       MR. BRILL:  Like I said --

13       THE COURT:  When you get a motion for bill of

14  particulars that extracts, for example, 50 individual names

15  that have appeared somewhere in the voluminous discovery that

16  you've been given and you ask for virtually everything, from

17  their blood type to their next of kin --

18       MR. BRILL:  I'll withdraw that, your Honor; I mean

19  the blood type.

20       THE COURT:  We're making progress.  You can see why

21  I decided this should not await formal briefing and we need to

22  get to the heart of the matter.

23       And I need to ask you this basic question.  I'm

24  going to repeat it:  Bottom line -- I hate the expression

25  "bottom line" -- what is it that you find you need that is not

1   asking the Government to become your paralegal?  What is it

2   that you need as we go forward in the final phase before the

3   trial?  What is it?

4           Because if it's reasonable, I'm going to push the

5   Government to provide it.  So far what I'm hearing is they're

6   providing it; they may not be putting labels, but as they get

7   closer to the trial and they, for themselves, figure out what

8   press releases are going to be used and what trades, et

9   cetera, they will tell you.  So, you're in pretty good shape

10  there.

11          MR. BRILL:  That's with respect to press releases.

12          THE COURT:  That's with respect to this entire

13  document.  What is it that you need here, Mr. Brill, to

14  prepare yourself for the trial?

15          MR. BRILL:  Your Honor, I didn't put anything in

16  there that I didn't need.  If you're asking me to kind of boil

17  it down, press releases were important.  Maybe the second

18  priority was the connection, the alleged connection, between

19  our client, Mr. Korchevsky, and the nonpublic information.

20          THE COURT:  If I were in your shoes, I'd be asking

21  for the same thing.

22          MR. BRILL:  What I don't really understand --

23          THE COURT:  How the Government is going to prove it.

24          MR. BRILL:  No.  What I'm asking for I think is

25  reasonable, and maybe I'm the one not understanding what

1     everybody else seems to understand.  I'm not asking for their

2     proof, okay?  I'm not asking for them to try their case.

3           What I'm asking for is that if there is evidence

4     among the millions of documents and servers and images of

5     computers that connect through forensically -- I'm not talking

6     about 3500 material where someone's going to come in and say

7     yeah, I did this with Mr. Korchevsky, I'm talking about if it

8     exists already in some documentation way or forensic way, then

9     I just want to be pointed to that.  And that's what I ask.

10          So, if your Honor asks me what also is most

11    important, if it exists I'd like for the Government to point

12    me to that particular piece of evidence that they say I

13    already have that I have to search through Lord knows what.

14          THE COURT:  For information purposes, we have

15    certain trades we clearly can demonstrate were affected by

16    your client.

17          MR. BRILL:  Correct.

18          THE COURT:  And we know when those trades occurred.

19    Presumably, they're going to be able to prove when these

20    releases were stolen; hence, the window, okay?  So, we know

21    that your client, according to the Government, traded within

22    the window, we know what was stolen.

23          And, so, beyond the circumstantial proof as to the

24    timing of these trades vis-a-vis the theft of the information,

25    what is it that you're asking?

```
 1              MR. BRILL:  Evidence that connects -- if it exists,

 2    connects Mr. Korchevsky with the nonpublic information.

 3              THE COURT:  Beyond the circumstances of his trade?

 4              MR. BRILL:  Correct.

 5              THE COURT:  Well, if they have an insider --

 6              MR. BRILL:  No -- I'm sorry.

 7              If there's an insider, then they can say it and

 8    that's the 3500 and then I understand that's coming.  But what

 9    I'm asking for is what I already have, is there evidence of

10    the connection between --

11              THE COURT:  There are some e-mails.  I saw that in

12    the indictment.

13              MR. BRILL:  There are tens of thousands of e-mails.

14              THE COURT:  It don't want to fight with you.  I'm

15    here to help you.

16              MR. BRILL:  I'm not taking it as a fight.  There are

17    tens of thousands of e-mails from everybody, from the 50 names

18    that, you know, are placed there.

19              So, my point is that I'm asking a specific question

20    in the bill of particulars, which is the evidence that exists

21    that connects Mr. Korchevsky with the nonpublic information.

22    I mean, it's a specific question.  If it exists through

23    forensics, your Honor.

24              I'll give you an example.  This is totally out of

25    the blue.  If one of Mr. Korchevsky's computers is connected
```

```
 1    to the nonpublic information before it's disseminated to the

 2    public, that may exist among the 20 computer images that were

 3    provided to us.

 4              THE COURT:  Sure.

 5              MR. BRILL:  But instead of looking through all

 6    those, which is almost impossible --

 7              THE COURT:  No, no, no.

 8              MR. BRILL:  -- then the question is does it exist

 9    and where?

10              THE COURT:  The question is:  Do you have the stolen

11    information on Mr. Korchevsky's computer during the window?

12              MR. TUCKER:  On Mr. Korchevsky's computer?  No,

13    Judge.

14              Just for the record, Judge, and I don't want to

15    bring us down too low into this, Mr. Brill and I have had many

16    conversations where we have painstakingly walked him through

17    the Government's theories, simply to avoid taking the Court's

18    time.

19              So, the indictment talks about what Court's -- the

20    evidence -- the Government's, excuse me, the Government's

21    proof is, and your Honor is exactly right:  It's laid out in

22    the indictment.

23              THE COURT:  Well, I wouldn't say it's "laid out."

24              MR. TUCKER:  It is cooperators and it is

25    corroborative communications.  That is the core of what we're
```

 1    doing.

 2              MR. BRILL:  What I'm saying is not mutually excusive

 3    to their cooperation and the indictment.  What I'm asking for

 4    is:  Okay.  Thank you for taking may call and telling me that

 5    here is what we think occurred.

 6              Now I'd like to do my job as defense attorneys to

 7    look at the evidence to say:  Does what Mr. Tucker told me

 8    even make sense compared to the evidence?  Where is the

 9    evidence of what Mr. Tucker said?

10              So, I'd like to see that.  That's what I'm asking

11    for.  I appreciate Mr. Tucker telling me certain things, but

12    that doesn't answer the question as to is there a forensic

13    connection between Mr. Korchevsky and the nonpublic

14    information?

15              We know now it's not on Mr. Korchevsky's computers.

16    They've said that now formally.  Is it on some other computer

17    that Mr. Korchevsky connected to?  Again, I'm thinking --

18              THE COURT:  Just to be certain here so we don't

19    misunderstand each other, I asked a very specific question:

20    Was the stolen merchandise found on Mr. Korchevsky's computer?

21              MR. BRILL:  Understood.

22              THE COURT:  The answer was no.  That doesn't mean

23    there weren't e-mails evidencing a knowledge on the part of

24    your client.  If you call that forensic -- I don't know what

25    you mean by "forensic" entirely, but if that's forensic

1    evidence, I can tell you right now from reading of the

2    indictment that the grand jury alleges such evidence exists.

3            If you want to know all the evidence, that's what

4    you just said, what's the evidence, and I don't blame you for

5    asking for the evidence.  Whether you're entitled to it or not

6    is another question.  But we need an answer because they seem

7    willing to give it to you.

8            MR. TUCKER:  Yes, Judge, we've really been trying.

9            THE COURT:  Oh, don't get the holier than thou on

10   me.

11           MR. TUCKER:  I apologize.  I'm not trying to do

12   that, Judge.

13           I guess on the flip side of that, like, there are

14   limits on what Government is required to proffer months before

15   trial.

16           THE COURT:  True.

17           MR. TUCKER:  And we've gone way past that.

18           THE COURT:  I would expect on a case like this to go

19   well past it.  What's the downside, he'll be prepared to

20   defend his client?

21           MR. TUCKER:  That's the theory, Judge.  We want a

22   trial on time.  We wanted our old trial date; now we're going

23   to trial when we're going.  We want this trial date to work.

24           THE COURT:  You said go to trial what?

25           MR. TUCKER:  When we're going.  We're going to trial

LAM        OCR        RPR

1   at the end of October now.  We liked our old trial date.

2          The point is, Judge, the Government is trying to

3   work with defense counsel, we are committed to continuing to

4   do so.  We were, frankly, surprised by the motion and its

5   breadth as well, but we are here to help as best we can.

6          THE COURT:  The man needs some help and I expect you

7   to help him out.

8          I'm going to stop.  I've made my position clear on

9   this and I expect there to be a response.

10          MR. TUCKER:  I apologize, Judge, because I don't

11   know if I'm 100 percent clear.  Defense counsel has not

12   articulated, as I understand it, something specific that he

13   still wants that he doesn't have.  He wants the evidence.

14          MR. BRILL:  I can try a third time.

15          THE COURT:  No, I thought he was quite specific the

16   last time, and you've responded:  To the extent you have it,

17   when you have it, you'll provide it.

18          MR. TUCKER:  Fair enough.

19          MR. BRILL:  That's with respect to press releases.

20          THE COURT:  How are you going to prove

21   Mr. Korchevsky's knowledge?  That is the question.

22          MR. BRILL:  I'm sorry, your Honor, with respect.

23   Not that broad, but more -- I'm again trying to be as specific

24   as I can and treat it like any other insider trading

25   allegation, which is the Government has evidence that the

                    LAM      OCR      RPR

1  Defendant in any insider trading case had access to the actual

2  information that is claimed to be material and inside.  That's

3  an oversimplification.

4         So, all I'm asking for is the same thing, not

5  whether -- all I'm asking for is something very specific with

6  respect to that broad theory, which is:  Is there evidence

7  among the thousands of pages of discovery that establishes not

8  e-mails between the co-defendants but a connection between

9  Mr. Korchevsky and the actual release, in whatever form,

10  whether it came from the server itself -- no one is alleging

11  Mr. Korchevsky did any hacking, so I don't think that's here.

12  But those press releases were stolen and then they went

13  somewhere.

14         The question is:  Is there any evidence among all of

15  this that shows a connection directly between Mr. Korchevsky

16  and that particular piece of evidence, the press releases

17  themselves?  Not through some communication that he may have

18  had with some co-defendant.  That's my question.

19         So, if you asked me, your Honor, what does this

20  whole day come down to so we can all go about our day, which

21  probably everybody feels like they want to do, then that would

22  be the question.  If that evidence exists, I just want to be

23  pointed to it.

24         If it's computer evidence through the expert, then

25  show me Mr. Korchevsky's IP address connects to another

1    computer which has the press release.  Okay, that answers my

2    question, we all conclude.  But that's the crux of.

3            THE COURT:  That's the question you have put to the

4    Government and they haven't answered it?

5            MR. BRILL:  I don't think so.

6            MR. TUCKER:  Judge, I'm really not trying to be

7    difficult.  If the question is did we find any press releases

8    on Mr. Korchevsky's computer or in his home, the answer is no.

9    And I think we have answered that question.

10           If the question is broader, like what is the

11   Government's evidence that he had access to the press

12   releases, then your Honor has already gotten to it:  It's

13   e-mail, it's IP records, it's text messages.  And those have

14   been disclosed.

15           MR. BRILL:  Thank you.  So, it's IP records.  We're

16   getting somewhere.  Fine, IP records.

17           Now, what does that do for us when the Government

18   says IP evidence exists between Mr. Korchevsky and another

19   location that has the press releases?  So, what do I do with

20   that as a defense attorney?

21           Do I say I'll just figure out which of the many

22   devices and servers that occurred on and try to find that --

23   forensically that connection?  It's a very tall order and

24   unreasonable, I think, as opposed to here is the evidence that

25   shows an IP address from your client's device to an IP address

```
 1    of another device that has the press release.

 2               If that exists, fine.  If it doesn't exist, that's

 3    fine too.  But that's what I'm asking for.  So, if your Honor

 4    wants me to boil that all down, that's what I thought I asked

 5    for in the bill of particulars and that's what I'm asking for

 6    now.

 7               THE COURT:  There's a lot in the bill of

 8    particulars.

 9               So, an IP connection between your client's computer

10    and the computer of a middleman?

11               MR. BRILL:  Okay.  Yes, I mean, that was the

12    connection.  Mr. Tucker says IP reports that prove some

13    connection between Mr. Korchevsky and the inside information,

14    the nonpublic information.  What is that?  Where is that?

15               MR. TUCKER:  I can't do this on the fly, Judge.

16    Those things exist; I don't have Bates numbers memorized.  If

17    the Court is directing the Government to proffer its trial

18    evidence now, that's tough for us.

19               THE COURT:  You haven't heard that from me.

20               MR. TUCKER:  I apologize.

21               THE COURT:  Let's cut through all the classic

22    language, bills of particulars and so forth.  Is he looking

23    for evidence?  Yes, of course he's looking for evidence.  He's

24    looking for evidence that he has.  He's looking for focus,

25    he's looking for help.  If you have a connection from an IP
```

1  address of a middleman, say, to Mr. Korchevsky, that's what

2  he's looking for.

3           You call that forensic evidence?

4           MR. BRILL:  Yes, it's computer forensic evidence.

5  If it even exists.  I'm just asking if it exists.  That's the

6  bill of particulars.  I'm not saying it exists.  We don't

7  admit that.

8           THE COURT:  Do you know?

9           MR. TUCKER:  I don't, Judge.

10          MR. HEALY:  Your Honor, one thing that concerns me

11  about the discussion on the press releases earlier:  When the

12  Government said we can Google them.

13          And that is true because I've done some of that to

14  get a sense of what it might have been.  The problem if you

15  read the motion is that once it's Googleable, it's no longer

16  nonpublic.  And we've specifically asked for the press release

17  as it was uploaded to the servers because it may not be the

18  same thing.  There may have been some -- we don't know.  We're

19  not newswire services.  It may have been edited.  And to say

20  we Googled this, ladies and gentlemen of the jury, and here's

21  the press release that came out, that's not nonpublic

22  information at that point.

23          We actually need to know what was the information

24  Mr. Korchevsky is alleged to have traded on.  And that would

25  have been the press release as it appeared on the server when

1    it was allegedly taken off the server.

2              THE COURT:  That is correct.  Can't deny that.

3              MR. HEALY:  I guess my concern is when they say

4    they're going to get them, I'm relying on the fact that the

5    Government will be turning over the press releases.  Not that

6    the federal government has Googled for them -- no disrespect

7    to the federal government -- but those are press releases

8    received from the newswire services.

9              THE COURT:  From what I know -- don't rely on

10   this -- once it's turned over to service, I'd be very shocked

11   to know it's ever been changed.

12             MS. DEAN:  At a very high level, I think at the end

13   of the day we don't have some of the things that the defense

14   wants in the form that they want it.  When they do make

15   requests of us, we endeavor, to the extent we can, to pull

16   that together for them and turn it over.  And what we can

17   commit to the Court is to continue to that between now and the

18   trial date.

19             I think we've been on the phone multiple times a

20   week every week for months now and I think all we can really

21   do is commit to the Court that we will continue to do that.

22   Some of what they're looking for and asking for we simply

23   don't have or we don't have it in the simplified form that

24   they want it.  When they call us and ask for things, we do our

25   best to get it to them.  I'm not sure we can say much more

1          than that.

2                    We've also represented that we anticipate turning

3          over trial exhibits and Jencks Act materials well in advance

4          of trial; not two weeks out, three weeks out, we were thinking

5          more along the lines of about a month.  And we've said that

6          multiple times to the defense as well.

7                    MR. BRILL:  I thought we agreed on six weeks.

8                    THE COURT:  You keep filing these motions, that six

9          weeks is going to shrink to six days.  I say that facetiously.

10         I don't blame you for filing the motion, not at all.

11                   One thing that has just come up, I assume we can

12         find out in light of the issuer or from the service that there

13         were no changes made between the transmittal of the release to

14         the victim company and its public dissemination.

15                   MR. TUCKER:  We can ask the question, absolutely.

16                   MR. BRILL:  May I end with one last point, then?

17         Back to the spreadsheet that alleges the improper trades that

18         Mr. Korchevsky engaged in --

19                   THE COURT:  Could I interrupt?

20                   How many trades do you anticipate proving of

21         Mr. Korchevsky's at trial?

22                   MR. TUCKER:  Judge, I think that the universe of

23         trades we think were illegal is what we've been talking about,

24         this 750 number.  Because we're not going to try to kill the

25         jury, I think we'll highlight a subset of those trades in an

1    effort to move things along.

2            Is that responsive to your Honor's question?  I'm

3    not trying to be evasive.

4            THE COURT:  "Highlight"?

5            MR. TUCKER:  Yes.  As Ms. Dean noted, we have an

6    expert who is really the type of expert who's going to sort of

7    march through our trading data and sort of make it consumable

8    for the jury.  There are certain trades; a subset of those

9    trades, which we honestly haven't chosen yet, which are

10   representative examples.

11           THE COURT:  I take it you're going to have somebody

12   testify, you're going to go through the forensic side about

13   the computers and the theft and when they occurred and what

14   was taken.

15           MR. TUCKER:  Yes; so far, exactly right.

16           THE COURT:  Step one.  Then you're going to put in

17   trades.  Then you'll put in something in the nature of a

18   summary or expert witness making a circumstantial connection

19   bolstered by your e-mail and texts, right?

20           MR. TUCKER:  Exactly, Judge.

21           MR. BRILL:  And then insider.

22           MR. TUCKER:  That's 100 percent correct, Judge.

23           MR. BRILL:  I appreciate your Honor's summary of it.

24   I'm aware of that and we join in our anticipated -- in the

25   anticipated theory on the Government's end.

```
 1              THE COURT:  Ever find any contraband on Mr.

 2   Korchevsky?  When I say "contraband," I don't mean evidence, I

 3   mean press releases themselves on his computer during the

 4   point in time.

 5              MR. TUCKER:  Standing here today, that is my

 6   understanding.

 7              MR. BRILL:  Your Honor is honing in.  I think, with

 8   all due respect, the last question your Honor then should ask

 9   to finish out what your Honor just inquired about is:  Okay,

10   there's no press releases on Mr. Korchevsky's computer; in his

11   possession as you put it, contraband in his possession.  But

12   is there -- as part of the evidence, yes, that we have been

13   given that we are trying to sift through, a -- again, I'm

14   repeating -- connection between Mr. Korchevsky and the

15   nonpublic information?

16              So, on top of what your Honor just said.  And that

17   is a critical question and if I had to boil this all down,

18   that's what I'm asking.  If the answer is no, that it's just

19   circumstantially, it's the expert, look at these trades,

20   they're odd, they're strange, it shows he must have had it, I

21   can live with that.

22              THE COURT:  It seems to me, given the algorithms the

23   commission has and this went on for five years, it's -- well,

24   I'm not experienced enough to use the word I was attempting to

25   use.  I was surprised that the pattern didn't become apparent
```

```
1   more quickly.  Or maybe I'm assuming facts.

2            MR. TUCKER:  I don't know about that, Judge.  That's

3   an interesting question that I don't know the answer to, I'm

4   sorry.

5            Does the Court have a question related to that?  We

6   have an SEC expert who is going to talk about that process.

7            THE COURT:  To cut through this last series of

8   questions, is there some sort of a surprise?

9            MR. TUCKER:  No, Judge, there really isn't.  Your

10  Honor, what your Honor just went through was a conversation

11  that Mr. Brill and I had a year ago --

12           THE COURT:  Well, I'm a little slow, forgive me.

13           MR. TUCKER:  You figured it out without me giving

14  you answers.  It's exactly what you described.  We're really

15  not trying to hide the ball.  The Government wants to do this

16  trial on time.  I've been on trial before your Honor before; I

17  know that you're not going to like it if we spring something

18  on defense.  That would be bad for the Government.  It's not

19  in anyone's interest.

20           MR. BRILL:  I'm not saying anybody is springing

21  anything on us.  I'm saying it was already provided to us, but

22  the nature of the case -- I think the premise of this whole

23  discussion is that the nature of this case is extremely

24  unique, it's extremely complex.  There are computer images

25  that have massive amounts of data that were provided to us.
```

1    This is not your simple, typical case by a long shot.

2              THE COURT:  What is all this data?

3              MR. TUCKER:  I'm not sure what data Mr. Brill is

4    referring to.

5              THE COURT:  Trading records.

6              MR. BRILL:  There were devices that were seized from

7    Mr. Korchevsky and devices that were seized from several of

8    the co-defendants.  Every single one of those devices, laptops

9    that we all have -- laptops were imaged, so every single item

10   within those laptops were provided to us.  Okay, great, right?

11   The Government really went beyond and gave us everything that

12   they had.  And I know it was a job for them to do that and I

13   always said we appreciate that.

14             But then we have to defend the case.  So, we're

15   given the images, but how do we find what we need to know

16   about the case?  Or else it's just a complete waste of

17   everybody's time.

18             THE COURT:  Too much of a good thing, huh?

19             MR. HEALY:  I think the simplest way to explain it,

20   from my perspective, is that in terms of the last time I

21   looked, we're up to Bates number 2,800,000 and something.  And

22   of that, if you just said there's a couple hundred thousand

23   e-mails, that includes, you know, you may already be a winner,

24   it includes honey don't forget to the pick up the milk, as

25   well as things in foreign languages.

```
1              It's not that we don't want to do our jobs.  We do

2    want to do our jobs.  But the language that's been going

3    around, needle in a haystack, grain of sand on the beach --

4              THE COURT:  I don't use that language.

5              MR. HEALY:  That's the language on this side of the

6    table, your Honor.

7              THE COURT:  I think perhaps I read it in your

8    motion.

9              MR. HEALY:  I think perhaps you did, your Honor.

10             All we're asking for is a little clarity on some of

11   these things, which I think everyone would agree if there's a

12   document that implicates a computer IP address registered to

13   Mr. Korchevsky that accessed one of the middlemen's Dropbox

14   accounts, if there is such a document I don't think anybody

15   would say we're not entitled to that document.  The problem

16   we're having is the Government is saying it's somewhere in

17   those 2,800,000 stack we gave you.

18             THE COURT:  A reasonable being, not I, could

19   question whether you're entitled to that document, first of

20   all.  We all know what the black-and-white law on the subject

21   is.  That said, I thought I heard:  We don't have those.

22             MR. TUCKER:  That's right, Judge.

23             MR. BRILL:  I thought Mr. Tucker said IP reports.

24   I'm not trying to read into --

25             THE COURT:  Here is what you need to do, in my
```

1    judgment:  You need to fashion specific questions to them.  Do

2    it in writing if you feel more comfortable.  I don't think it

3    fosters the kind of relationship you want to have with your

4    adversary given the circumstances you're in, but do it the way

5    you think is best.  Very specific questions.

6          To the extent you think you are entitled, you don't

7    get it, or don't get assurance that you will get it when they

8    have it or they have prepared it, come back to me, and then

9    I'll make a ruling.

10          MR. TUCKER:  Thank you, your Honor.

11          MR. HEALY:  Thank you.

12          THE DEFENDANT:  Thank you very much.

13          MR. BRILL:  Have a nice day, everybody.

14          THE COURT:  It think it was a profitable discussion

15    for all concerned.

16          MR. TUCKER:  I certainly enjoyed dancing for your

17    Honor, as always.

18          THE DEFENDANT:  Thank you very much.

19          THE COURT:  I invite you all, to the extent your

20    able, as Judge Weinstein celebrates and we commemorate his 50

21    years on the bench in one-half hour.

22          (A chorus of congratulations.)

23          (Matter concluded.)

24    I certify that the foregoing is a correct transcript from
     The record of proceedings in the above-entitled matter.
25          /s/ Linda A. Marino        July 21, 2017