

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RMT/JN/DG                         *271 Cadman Plaza East*
F.#2012R00103                   *Brooklyn, New York 11201*

May 29, 2018

By Hand and ECF

Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

              Re:     United States v. Vitaly Korchevsky and Vladislav Khalupsky
                       Criminal Docket No. 15-381 (S-1) (RJD)

Dear Judge Dearie:

       The government respectfully submits this letter memorandum in reply to the defendants' May 21, 2018 opposition submissions (ECF Nos. 256 ("Khalupsky 5/21/18 Opp.")[1], 258 ("Korchevsky 5/21/18 Opp.")) and in response and opposition to Korchevsky's May 21, 2018 supplemental motions in limine (ECF No. 259 ("Korchevsky 5/21/18 Mot.")).

I.       Korchevsky's Expert Disclosures Are Still Insufficient

       In its motions in limine, the government argued that Korchevsky's expert disclosures were insufficient under Federal Rule of Criminal Procedure 16(b)(1)(C) and requested that the Court order Korchevsky to provide the information required by the Rule, specifically, his experts' opinions, the bases for those opinions, and the methodologies underlying his expert analyses. (See ECF No. 249 ("Gov. Omnibus Mot.") at 12-13). In response, Korchevsky filed a supplemental expert disclosure (ECF No. 255 ("Korchevsky 5/21/18 Supp. Disclosure")) that still fails to satisfy the requirements of Rule 16(b)(1)(C).

---

       [1] Khalupsky also filed a letter on May 21, 2018 requesting, inter alia, two additional peremptory challenges during jury selection beyond those allotted under Federal Rule of Criminal Procedure 24(b)(2). The government objects to this request because such additional challenges are unnecessary and would unfairly prejudice the government.

A.     Michael Mayer

Korchevsky's supplemental disclosure with regard to Michael Mayer remains insufficient in multiple ways.  First, it states that Mayer may "opine about instances of purchases and sales that are inconsistent with trading on material, non-public information." (Korchevsky 5/21/18 Supp. Disclosure at 2).  But Korchevsky has not identified the trades about which Mayer will testify or how Mayer reached his conclusions.  (Id.).  Second, Korchevsky's supplemental disclosure states that Mayer's opinions will be based on the "trading records contained in the government's production in this case" and the "government's list of accused trades," but does not specify what, if any, other materials on which Mayer will rely.  (See id.).  If Mayer's opinions will be based solely on these materials, Korchevsky should say so explicitly and identify the specific trading records upon which Mayer will rely.  If Mayer's opinions will be based on additional sources, Korchevsky should provide those sources, as required by Rule 16(b)(1)(C).  Third, Korchevsky's supplemental disclosure states that Mayer "will offer his opinion regarding the similarities between the un-accused trades to the accused trades in terms of size, frequency and profitability" (id.), but does not identify the trades upon which Mayer will opine or the substance of Mayer's opinions.  Fourth, Korchevsky's supplemental disclosure states that Mayer will "rebut certain analysis undertaken by the government's expert, Dr. Canjels," without providing any information regarding Mayer's particular opinions on this topic.[2] (Id.).  In sum, Korchevsky's disclosure remains insufficient.  See, e.g., United States v. Valle, No. 12 CR 847, 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) (Gardephe, J.) ("Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions."); United States v. Wilson, 493 F. Supp. 2d 484, 487 (E.D.N.Y. 2006) (Garaufis, J.) (expert testimony may be excluded if the defendant "has made no attempt at all to describe the bases and reasons for those opinions as required by [Rule 16(b)(1)(C)]").

B.     Alan Katz and Josiah Roloff

Korchevsky's supplemental disclosure does not identify any opinions that Alan Katz or Josiah Roloff will offer at trial.  Instead, it identifies general subject matters: "the flow of money in and out of the accounts of Mr. Korchevsky and his codefendant" (Katz) and "technical aspects of the intrusions to the newswire companies; the scope and nature of internet access with respect to different devices; and the inferences that can be drawn from the electronic communications that have been produced" (Roloff).  (Korchevsky

_____

[2] Korchevsky's counsel has previously advised that Korchevsky will be producing the exhibits upon which Mayer will be relying by June 1, 2018.  To the extent those exhibits include information that satisfies the requirements of Rule 16(b)(1)(C) – including, but not limited to, the bases for Mayer's opinions – the government will modify or withdraw its request for additional disclosures.  However, given the current state of the disclosures and Korchevsky's assertion that he has provided "sufficient information under the Rule" (Korchevsky 5/21/18 Opp. at 1), the government respectfully reserves its right to renew its request for additional disclosures after June 1, 2018.

5/21/18 Supp. Disclosure at 2-3).  These disclosures are wholly insufficient under Rule 16.
E.g., Valle, 2013 WL 440687, at *5.

II.     Mayer Should Be Precluded From Opining on the Reasonableness of Korchevsky's
        Trades

        In its motion in limine, the government moved to preclude Mayer from opining on
the reasonableness of Korchevsky's trades.  (See ECF No. 249 at 12-13).  In response,
Korchevsky argues that he "is entitled and does intend to introduce evidence about Mr.
Korchevsky's trading strategies, including but not limited to the public sources of
information available and utilized by Mr. Korchevsky at the time of the trades."
(Korchevsky 5/21/18 Opp. at 3-4).  Korchevsky's response ignores the government's motion,
conflates fact and expert testimony, is inconsistent with his own expert disclosures, and
misconstrues the applicable case law.

        First, an expert's opinion on whether Korchevsky's trades were reasonable is
irrelevant to the question the jury will have to decide: whether Korchevsky traded using
material, non-pubic information from stolen press releases.  Second, Korchevsky's
arguments about the introduction of evidence upon which he relied when making trades
conflates fact and expert testimony.  If he chooses to do so, Korchevsky can seek to
introduce evidence showing that he relied on particular sources.  For example, if he elects to
testify, Korchevsky can tell the jury what sources of information he relied upon.  But the
question of whether Korchevsky can introduce such evidence is distinct from the question of
whether Mayer can offer expert testimony about the reasonableness of Korchevsky's trades.
For the reasons set forth above and in the government's opening brief, Mayer should be
precluded from doing so.  Third, even if Mayer's opinion as to the reasonableness of certain
trades were relevant – and it is not – there would be no basis for him to offer that opinion:
according to Korchevsky's supplemental expert disclosure, the only sources upon which
Mayer will purportedly rely are trading records and the government's identification of
unlawful trades.

        Korchevsky's interpretation of United States v. Martoma, 993 F. Supp. 2d 452
(S.D.N.Y. 2014) (Gardephe, J.) is off the mark.  In quoting a portion of Martoma in which
the court noted that it had allowed the defendant to introduce materials that "shed light on his
state of mind concerning the [ ] positions that were sold at the end of July 2008," Korchevsky
omits the first part of the sentence, in which the court stated that the materials had been
reviewed by the defendant at the time of the trades at issue.  Martoma, 993 F. Supp. 2d at
455 ("The Court ruled during trial that the Defendant would be permitted to introduce
materials that he reviewed in 2008 that shed light on his state of mind concerning the Elan
and Wyeth positions that were sold at the end of July 2008.").  Moreover, Korchevsky
ignores that the analyst reports introduced into evidence in Martoma were apparently not the
bases of the proffered expert opinion.  See id. at 456, n.2 (noting that the expert's proffered
analysis was "based in large part on material [the defendant] never saw").  Finally,
Korchevsky ignores Martoma's holding that, standing alone, an expert's post-hoc analysis

about the value of certain stocks would not assist the jury in determining the defendant's state of mind at the time he traded in those stocks.  Id.

Here, the scope of and bases for Mayer's opinions remain unclear.  To the extent Korchevsky seeks for Mayer to offer a post-hoc analysis of the reasonableness of certain trades, such an analysis, untethered to the factual record, would not assist the jury in determining the question it must decide: whether Korchevsky fraudulently traded using material non-public information.

III.     Dr. Eugene Canjels Should be Permitted to Testify Regarding his Expert Findings

Korchevsky argues that Dr. Eugene Canjels, the government's expert witness, should not be permitted to opine that certain of the trading during the charged time frame was based on the receipt of press releases in advance of public distribution because any such testimony would usurp the role of the jury as the ultimate fact finder of Korchevsky's guilt. (See Korchevsky 5/21/18 Mot. at 11).  The government disagrees with Korchevsky's characterization of Dr. Canjels' proffered testimony.

The government anticipates that Dr. Canjels will opine that, based on his quantitative and statistical analysis of brokerage account records, much of the defendants' and their co-conspirators' trading was concentrated around the public dissemination of earnings news.  Dr. Canjels will opine that in many circumstances the defendants and their co-conspirators opened positions "in the window" – the time period between when a press release was uploaded to a newswire and when it was disseminated to the public – and exited the position shortly after the press release was made public.  Dr. Canjels will also testify that a statistical analysis of the trading activity, including the purchase and sale of the securities at issue, indicates that it was extremely improbable for the trading to occur in such a manner if it was completely randomized and not correlated with the upload and dissemination of press releases.

Contrary to Korchevsky's assertions, Dr. Canjels' statistical analysis is quintessential expert testimony and will not usurp the role of the jury as the ultimate fact finder.  As permitted by Rule 702(a), Dr. Canjels' testimony will help the jury understand the evidence and determine whether or not the defendants traded on press releases before they became public.  Dr. Canjels will not state an opinion about whether the defendants did or did not have the requisite mens rea to commit the charged crimes.  (See Rule 704(b) (providing that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense").  The jury will be free to determine whether the defendants had the requisite knowledge and intent to trade on press releases in advance of the market.

Korchevsky's request to limit Dr. Canjels' testimony is therefore without merit.

4

IV.     Evidence of the Defendants' Prior Good Conduct and Generosity Are Irrelevant and
        Not Admissible at Trial

        In its in limine motion, the government moved to preclude the admission of
any evidence or argument at trial by the defendants regarding prior good conduct, including
but not limited to evidence of the defendants' involvement in community service or
charitable giving. (See Gov. Omnibus Mot. at 14-15). In his response, Korchevsky argues
that he should be permitted to elicit reputation evidence from members of his religious
community, "assuming it is probative of a pertinent trait or character."[3] (Korchevsky
5/21/18 Opp. at 4-5). Korchevsky also argues that he should be permitted to "introduce
specific instances of generosity contrary to his own material interests, respect for rules and
adherence to authority" because these character traits are essential elements of the "charges
in the indictment." (Id. at 5-6). Korchevsky is incorrect.

        Fed. R. Evid. 404(a)(2)(A) provides that a defendant in a criminal case may
offer evidence of a pertinent character trait. (emphasis added). When evidence of a person's
character trait is admissible, it may be proved by testimony about the person's reputation or
by opinion testimony. Fed. R. Evid. 405(a). Rule 405(b) provides that when a "person's
character or character trait is an essential element of a charge, claim or defense, the character
trait may also be proved by relevant specific instances of the person's conduct." However,
while a defendant is permitted to offer evidence of a personal opinion or his reputation for a
pertinent character trait, he should not be permitted "to offer testimony regarding 'specific
instances' of conduct in conformity with a trait that is not at issue.'" United States v. Riley,
638 Fed. Appx. 56, 64 (2d Cir. 2016) (quoting United States v. Doyle, 130 F.3d 523, 542 (2d
Cir. 1997)). Furthermore, the Court may exclude even relevant evidence if its probative
value is substantially outweighed by a danger of unfair prejudice or confusing the jury. See
Fed. R. Evid. 403; Riley, 638 Fed. Appx. at 64.

        Korchevsky's purported character traits for generosity and adherence to rules
are not relevant at trial. Korchevsky may be extremely charitable to those around him and
generally rule abiding and still have committed the offenses charged. Simply because
parishioners in Korchevsky's church deem him to be charitable does not bear in any way on
whether he obtained material, non-public information and traded on that information, or
whether he was a member of a money laundering conspiracy stemming from the fraud.

        Notably, Korchevsky already improperly attempts to inject his position as an
"ordained minister" into this case. (Korchevsky 5/21/18 Opp. at 5). Any testimony by
members of Korchevsky's religious community should be properly restricted in both volume
and scope to ensure that it is admissible under the rules of evidence and that it does not
distract the jury from its obligation to decide Korchevsky's case based on the evidence
before it, as opposed to based on sympathy or religious leanings.

---

[3] Khalupsky did not oppose the government's motion.

Moreover, evidence of "specific instances" of generosity, respect for rules and adherence to authority is not at all related to any element of the crimes charged, see Korchevsky 5/21/18 Opp. at 5-6, let alone essential elements. See Doyle, 130 F.3d at 542 (holding that proof of specific acts was inadmissible where character was not an element of the offense). Therefore, Korchevsky should not be permitted to introduce specific instances of his good character.[4]

Admitting any such testimony would distract the jury from the task at hand – deciding whether Korchevsky committed the essential elements of the charged offenses. Significantly, this type of testimony also invites jury nullification as it asks the jury to replace Korchevsky's intent to commit fraud with his ability to be generous and follow the law. This type of evidence will not only distract from the jury's task, but will also unduly prejudice the government.

V.      Evidence Regarding the Layering Scheme Should Be Admitted

Both Korchevsky and Khalupsky move to preclude the government from seeking to admit two emails (Government Exhibits ("GX") 273 and 274, enclosed herewith) and their associated attachments that the defendants' co-conspirators sent them regarding a market manipulation trading strategy that involved ordering and cancelling trades prior to execution in order to cause temporary price changes that could be arbitraged in parallel trading. (5/21/18 Korchevsky Mot. at 7-9; 5/21/18 Khalupsky Opp. at 2-3). Khalupsky also moves to strike the reference to the email in the Superseding Indictment as surplusage. (5/21/18 Khalupsky Opp. at 2). The defendants argue, in essence, that the emails are inadmissible under Rule 404 or otherwise should be excluded under Rule 403 of the Federal Rules of Evidence. Their arguments fail.

The emails are highly probative of the criminal nature of the relationship between the defendants and Pavel and Arkadiy Dubovoy, and inextricably intertwined with the narrative of the charged conspiracy. See, e.g., United States v. Inserra, 34 F.3d 83, 89 (2d Cir.1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"). As set forth in greater detail in the government's April 30, 2018 omnibus motion, the conspiratorial relationship between the Dubovoys and the defendants boiled down to this: the Dubovoys had money with which to trade and access to Ukrainian hackers who could obtain pre-distribution press releases from the newswires, and the defendants had the trading expertise that allowed them to monetize the stolen releases. That the Dubovoys forwarded these emails to the defendants is powerful evidence regarding the close, criminal nature of the relationship between these individuals. To the extent that

---

[4] Notably, the government intends to introduce portions of Korchevsky's tax returns into evidence to show Korchevsky's gains from the illegal activity. Merely because the government introduces portions of his tax returns to prove his illicit gains does not permit Korchevsky to introduce evidence of his charitable donations, which are also reflected in his tax returns.

the defendants seek to claim that they had only legitimate business dealings with the Dubovoys, and/or were unwitting of the Dubovoys' criminal activities (a position the government expects both defendants to take at trial), the fact that the Dubovoys were comfortable forwarding emails regarding other market manipulation schemes to the defendants directly undercuts that contention.

Even if the Court determines these emails do not constitute direct evidence of the charged conspiracies, such evidence is not improper propensity evidence under Rule 404.[5]  To the contrary, these emails will provide the jury with crucial background information and context regarding the internal dynamics of the charged conspiracy and the bases for the mutual trust between the defendants and other participants in the scheme.  See, e.g., United States v. Pipola, 83 F.3d 556, 565 (2d Cir. 1996); United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir. 1993).  Accordingly, the government should be permitted to introduce GX 273 and GX 274 at trial.

VI.     Khalupsky's Post-arrest Statements are Admissible at Trial

Khalupsky seeks to preclude the government from eliciting his post-arrest statement that he was interested in telling the government more details about the hackers, this case and other matters involving the Ukraine (the "Post-Arrest Statement").  (Khalupsky 5/21/18 Opp. at 3-4).  Khalupsky argues that the introduction of his Post-Arrest Statement "implicates [his] right to remain silent" and is inadmissible under Federal Rule of Evidence 403.  (Id.).  Khalupsky's arguments are without merit.

Introducing Khalupsky's Post-Arrest Statement cannot give rise to a violation of his right to remain silent because there is no dispute that the statement itself was voluntary and lawfully obtained.  This alone is dipositive.  Khalupsky cites no law in support of his claim that a defendant's constitutional right to remain silent is violated through the introduction of his voluntary post-arrest statements.

Khalupsky's Rule 403 argument is equally meritless.  Khalupsky does not appear to dispute that his Post-Arrest Statement is both relevant and probative, but rather contends that it should be excluded because it may lead the jury to speculate about what Khalupsky might have known about the hackers and this case.  (Id. at 4).  Under Khalupsky's theory, a defendant's voluntary statement to law enforcement that he would like to provide more information about his co-conspirators and his case would be inadmissible so long as the defendant subsequently did not provide the additional information.  Khalupsky cites no law in support of this novel proposition.  The evidence presented at trial will show that

---

[5] Korchevsky also contends that the government has not satisfied its notice obligation regarding this conduct pursuant to Rule 404(b).  (5/21/18 Korchevsky Mot. at 8).  Although the government maintains this conduct is direct evidence of the charged offenses, the government's pretrial disclosures – including references to these emails in its April 30, 2018 omnibus motion and disclosure of the emails as marked trial exhibits one month in advance of trial – certainly satisfy any disclosure obligation under the Rule.

Khalupsky made the Post-Arrest Statement.  That statement is highly probative of his knowledge regarding the charged crimes and should be admitted.

VII.    The Government Should be Permitted to Introduce into Evidence the Challenged Co-Conspirator Statements

        Khalupsky seeks to limit the admission of certain statements under Rule 801(d)(2)(E) and asks this Court to "make a determination" as to the admissibility of those co-conspirator statements before they are presented to the jury.  (Khalupsky 5/21/18 Opp. at 4-5).  Given the established law set out below, Khalupsky's motion must fail.

        "The law is well settled within this circuit that declarations that are otherwise hearsay may nevertheless be provisionally admitted, subject to connection of the defendant with the conspiracy alleged, as long as the trial court is ultimately satisfied that the participation of the defendant against whom the declaration is offered has been established by a fair preponderance of the evidence independent of the hearsay utterances."  United States v. Cambindo Valencia, 609 F.2d 603, 630 (2d Cir. 1979).  "To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence:  first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of the conspiracy."  United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999).  Statements that "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy" are admissible.  Id.  Significantly, the "Government need not show that the listener, or the person who heard the declarant's statement, was also a member of the conspiracy."  United States v. Paredes, 176 F. Supp. 2d 183, 187 (S.D.N.Y. 2001) (Leisure, J.).  The statement must merely prompt such a listener "to respond in a way that promotes or facilitates the carrying out of a criminal activity."  See United States v. Tracy, 12 F.3d 1186, 1196 (2d Cir. 1993).

        While independent evidence must corroborate the hearsay statements to show that they are reliable, the government need not establish fully that an individual is a co-conspirator before admitting hearsay statements of such co-conspirator.  That requirement would swallow the hearsay exception because it is often the communications among individuals that fully establish the scope, nature and duration of the conspiracy.  Indeed, conspiracy depends on a verbal or non-verbal communicative act – an agreement.  Rather, as Cambindo Valencia, Paredes and Gigante demonstrate, there must be "some independent corroborating evidence of the defendant's participation in the conspiracy" and the totality of the evidence – both the independent corroborative evidence and the hearsay statements themselves – must be considered when the Court determines whether a particular individual is a co-conspirator.  See Gigante, 166 F.3d at 82 (emphasis added).

        Finally, a court may conditionally admit a statement pursuant to 801(d)(2)(E) and then evaluate whether the government has met its burden of proving by a preponderance

that the rule applies at the close of the government's case. See, e.g., United States v. Watts, 934 F. Supp. 2d 451, 477 (E.D.N.Y. 2013) (Matsumoto, J.).

Here, the evidence will establish that both defendants, Arkadiy Dubovoy, Pavel Dubovoy, Igor Dubovoy, Leonid Momotok, Alexander Garkusha and others were members of an international conspiracy to steal press releases before they were distributed to the general public, and to fraudulently trade on the information the press releases contained, among other crimes. The government's proof will further establish that Arkadiy Dubovoy and Igor Dubovoy regularly communicated with the Garkusha and Momotok to coordinate trading and other activities in furtherance of the conspiracy.

Moreover, while under Second Circuit case law the Court may admit a co-conspirator statement and evaluate whether it qualifies under the exception at the close of the government's case, with much of the testimony the government anticipates here, the admissibility of the co-conspirator statements will be clear from the testimony itself. Notably, even the co-conspirator statements cited by Khalupsky are clearly admissible under the co-conspirator exception because they were all made by a co-conspirator, in most cases, Arkadiy Dubovoy to either Garkusha or Momotok in order to inform the co-conspirators regarding the progress or status of the conspiracy. See United States v. Fawwaz, 694 Fed. Appx. 847, 851 (2d Cir. 2017) (statement is made in furtherance of a conspiracy where the statement provides "information regarding the current status of the conspiracy and its membership"); see also United States v. Russo, 302 F.3d 37, 46 (2d Cir. 2002) (collecting cases) ("The operation of [a criminal conspiracy] requires that information be passed among interested persons, advising them of the membership and the hierarchy.").

At bottom, Khalupsky's request for a pre-trial determination of whether the statements fall into the co-conspirator category is merely an attempt to hear cooperator testimony in advance of it being presented to the jury. Given the clear case law in this circuit that such a precaution is unnecessary, Khalupsky's motion should be denied.[6]

VIII.  Evidence of Korchevsky's Employment History is Relevant and Admissible at Trial

Korchevsky argues that his prior employment records are inadmissible at trial because they have no probative value and are highly prejudicial. (Korchevsky 5/21/18 Mot. at 10). To the contrary, Korchevsky's prior employment history is highly probative of

---

[6] The government will similarly seek to admit certain co-conspirator statements during the testimony of Igor Dubovoy. For example, Igor Dubovoy is expected to testify that Arkadiy Dubovoy told him in approximately 2011 that Korchevsky and later Khalupsky were trading on Arkadiy Dubovoy's behalf in his online brokerage accounts. Arkadiy Dubovoy made these statements in furtherance of the conspiracy, because he relied upon Igor Dubovoy to monitor the defendants' trading in his brokerage accounts, and to provide periodic financial accountings. Accordingly, Arkadiy Dubovoy's statements were made in furtherance of the conspiracy, and this testimony should likewise be admitted.

Korchevsky's motive to commit the charged crimes and corroborative of expected cooperator testimony, as described below.  Furthermore, the evidence is no more prejudicial than the charged conduct.

The government seeks to introduce records from Morgan Stanley reflecting Korchevsky's "2000 Firmwide Performance Evaluation," which states that Korchevsky had a difficult time while at the firm and had "very disappointing" investment performance.  (See GX 602 at 2, enclosed herewith).  The government also intends to introduce records from the Financial Industry Regulatory Authority ("FINRA") establishing that Korchevsky lost his securities industry registration on October 6, 2008 and was unemployed after that point.  (See GX 601, enclosed herewith).

The evidence of the Morgan Stanley evaluation is relevant for a number of reasons.  First, the government expects that Arkadiy Dubovoy will testify that Korchevsky legally traded in Dubovoy's brokerage account in approximately 2000, thereby establishing the relationship foundation for the charged conspiracy.  Dubovoy will further testify that he was disappointed with Korchevsky's trading prowess and lost approximately $17,000 dollars as a result of the trading.  The Morgan Stanley performance evaluation describing Korchevsky's poor performance during the same period of time is strong corroboration for Dubovoy's testimony.

Moreover, evidence of Korchevsky's poor performance at Morgan Stanley and his lack of employment in the financial industry directly preceding the charged conduct is strong evidence of motive to commit the instant crime.  (See Fed. R. Evid. 401 (defining relevant evidence as evidence having any tendency to make a fact of consequence to the determination of the action more or less probable than without the evidence)).  The government should be permitted to introduce evidence that establishes that Korchevsky had a motive to use material, non-public information to enhance his trading ability.  See, e.g., United States v. Ibrahim, No. 07 CR 543, 2011 WL 1868563, at *2 (May 13, 2011) (Irizarry, J.) (holding that "[e]ven though motive does not bear directly on the elements of a charged crime, evidence offered to prove motive is commonly admitted").  The government also expects that Korchevsky will argue that he was a successful trader who was capable of delivering the outsized returns observed during the relevant time period.  The government should be able to rebut this defense with evidence demonstrating that he was not a successful trader, and instead was struggling professionally.  See United States v. Shyne, No. 05 CR 1067, 2007 WL 1075035, at *34 (S.D.N.Y. Apr. 5, 2007) (Karas, J.) (holding that evidence of a defendant's financial history is often relevant to showing motive to commit a crime, especially if that crime involves pecuniary gain).

Furthermore, as indicated in Korchevsky's response brief to the government's motion in limine (Korchevsky 5/21/18 Opp. at 4-6), Korchevsky intends to introduce some form of character evidence establishing his good reputation in the community.  The government expects that cooperator testimony will establish that Korchevsky routinely touted himself as a successful trader.  The government should be permitted to introduce

evidence contradicting this assertion to show that Korchevsky was not truthful as to his trading ability.

Lastly, the evidence of Korchevsky's prior employment history that the government seeks to introduce is no more prejudicial than the charged conduct in this case, which alleges that Korchevsky used material, non-public information to trade ahead of the market.  The Supreme Court has observed that "[t]he term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997).  Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).  Certainly, the evidence of Korchevsky's prior employment history is not indicative of his guilt of the instant crimes, but it is relevant to corroborate witness testimony, rebut defenses expected at trial and to prove motive.[7]

IX.    Korchevsky's Motion to Preclude Carocci's Expert Testimony Should be Denied

Korchevsky moves to preclude government witness Thomas Carocci from testifying as an expert with regard to (i) FINRA's role in regulating the trading of stocks of publicly traded companies; (ii) general securities industry terms; (iii) disclosure requirements of publicly traded companies registered with the SEC; and (iv) documents required to be filed with the SEC to comply with such disclosure requirements.[8]  (Korchevsky 5/21/18 Mot. at 12-13).  Korchevsky's motion should be denied.  As the Second Circuit has explained, "[p]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."  See United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) (affirming admission of expert testimony providing background on federal securities regulations and explaining the requirement of an SEC form).[9]  Here,

---

[7]   Contrary to Korchevsky's argument that evidence of his Morgan Stanley evaluation is somehow misleading given the "historic crash" (Korchevsky 5/21/18 Mot. at 11), it is clear from the evaluation that Korchevsky's performance was "subpar with respect to both the benchmark" set by Morgan Stanley, and in comparison to the competition, GX 602 at 11.  In fact, the evaluation specifically describes Korchevsky's performance in light of the environment at that time.  (Id.).  Similarly, Korchevsky's argument that the FINRA form is somehow misleading (Korchevsky 5/21/18 Mot. at 11) is without merit, since as Korchevsky himself points out, the form does not indicate that Korchevsky was fired from his position (see GX 601).

[8] Carocci's testimony likely will also address, inter alia, the processes through which trades are executed and settled; securities industry exams taken by the defendants; and the defendants' Central Registration Depository reports.

[9]  It is well-established law that expert testimony providing the jury with key background information is admissible and proper.  For example, the Second Circuit has

11

Carocci's testimony will help the jury understand unfamiliar terms and concepts related to securities trading and regulation, FINRA and the SEC.  He should be permitted to offer expert testimony on these subjects.[10]

Korchevsky also moves to preclude Carocci from testifying about types of trading, including trades that were executed based on material non-public information. (Korchevsky 5/21/18 Mot. at 12-13).  Korchevsky contends that such testimony would usurp the jury's function and be an opinion on the ultimate issue of Korchevsky's guilt.  (Id.). Korchevsky is incorrect.  The government anticipates that Carocci will testify that certain trades executed by the defendants were consistent with the material non-public information to which they had access.  This testimony is directly contrary to the noticed testimony of Korchevsky's expert, who, according to Korchevsky' s disclosure, may opine that trades were "inconsistent with trading on material non-public information."  (Korchevsky 5/21/18 Supp. Disclosure at 3.))  Carocci's testimony is not, as Korchevsky contends, an opinion as to innocence or guilt.

X.      Khalupsky's Request for a Jury Instruction Specifying Particularized Admission of Evidence for Each Defendant Should be Denied

Khalupsky moves the Court to periodically tell the jury against which defendant particular evidence is being admitted.  (Khalupsky 5/21/18 Opp. at 6-7).  The government opposes this request.  Put simply, although certain evidence may cut more directly against one defendant, the defendants collectively are charged with being members of a single, multi-object conspiracy.  As such, evidence that may explicitly pertain to one will

---

repeatedly affirmed the introduction of expert testimony providing background information on subjects ranging from Islamic fundamentalism, see, e.g., United States v. Kaziu, 559 Fed. Appx. 32, at *4 (2d Cir. March 13, 2014) (summary order) (affirming admission of expert testimony regarding al-Shabaab's history, as well as its recruiting and publicity efforts) to organized crime, see, e.g., United States v. Matera, 489 F.3d 115, 121 (2d Cir. 2007) (upholding the admission of an officer's expert testimony "about the composition and structure of New York organized crime families" and observing that the district court had limited the expert's testimony to general information rather than information about the defendants themselves); United States v. Feliciano, 223 F.3d 102, 109 (2d Cir. 2000) (upholding an FBI agent's expert testimony about "the structure, leadership, practices, terminology, and operations of [a street gang, Los Solidos]").

[10]  In Bilzerian, the Second Circuit cautioned that an expert's testimony should not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  Bilzerian, 926 F.2d at 1294. Korchevsky's challenge to Carocci's testimony on the above-described topics is not that the testimony would usurp the role of the judge or jury, but rather that Carocci should not be designated an expert.  For the reasons stated herein, Carocci's testimony is proper expert testimony.

often be inculpatory as to both.  For example, evidence regarding Korchevsky that corroborates testimony of a cooperating witness will similarly corroborate testimony by that same cooperating witness regarding Khalupsky.  The determination of whether particular evidence proves the guilt of one or both defendants is ultimately a question for the jury, after having heard all the evidence and counsels' arguments.  Accordingly, while the Court should and will instruct the jury that the government is required to prove the guilt of each defendant beyond a reasonable doubt, the Court should not tell the jury against whom such evidence is (or is not) inculpatory.[11]

XI.    Korchevsky's Objections Regarding the Admission of Press Releases Should be Denied

Korchevsky moves to preclude the government from admitting certain press releases at trial, arguing that those press releases "cannot be authenticated as what they are proposed to be as required under Rule 901 of the Federal Rules of Evidence."  (Korchevsky 5/21/18 Mot. at 2-7).  Korchevsky's authenticity challenge – particularly before the government has sought to authenticate the documents – fails.

As an initial matter, the government has marked, and will seek to introduce, a large number of exhibits that <u>are</u> the pre-distribution versions of the press releases on which the defendants traded and/or that hacker co-conspirators acquired during the course of the conspiracy.  These include (but are not limited to) the press releases in the GX 5000 series to which Korchevsky objects.  The government will establish that those press releases were recovered from a PR Newswire server, along with forensic indications that computer hackers had sought to exfiltrate them from PR Newswire systems.  These press releases are probative, even where the government will not argue that the defendants ultimately traded upon them.

With respect to the press releases in the GX 4000 series to which Korchevsky objects, the government marked those exhibits mainly because the government understood the defense was requesting the press releases associated with the defendants' suspect trades. The smaller subset of these that the government will seek to admit during trial will be authenticated by the paralegal specialist who acquired them online or by a representative from the issuing newswire.  The authenticating witness will make clear that the press release was the final, disclosed release, and/or was obtained using open-source searches in mid-2018.[12]  This is certainly sufficient to satisfy Rule 901, and since the government will not

---

[11] The government agrees that its summary exhibits should not use the abbreviation "VK," as that is potentially confusing.  (Khalupsky 5/21/18 Opp. at 6).  The government will refrain from doing so.

[12] To the extent that defense counsel has identified certain press releases from the GX 4000 series that are not the releases identified in the corresponding SEC database generated by expert witness Eugene Canjels (GX 8002), the government will attempt to locate and

seek to admit the releases for their truth, they are not hearsay.  To the extent the defense wants to argue to the jury that those releases are substantially different from the draft releases uploaded to the newswires by the issuers that the hackers stole, the defense will be free to do so.

Finally, to the extent Korchevsky contends that certain of the pre-distribution Business Wire press releases were not, in fact, stolen via computer hacking based on the line he cites from the Fidelis report (see Korchevsky 5/21/18 Mot. at 6-7), this is an argument for the jury, and not a basis to exclude the government's evidence.  Indeed, there is substantial evidence to the contrary, including that approximately 145 Business Wire press releases were sent to an email account Korchevsky accessed, and that Korchevsky traded upon the majority of those press releases, all before their distribution to the general public.

XII.    Conclusion

For the reasons set forth above, the Court should deny the defendants' motions in limine and grant the government's pretrial motions.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:      /s/
Richard M. Tucker
Julia Nestor
David Gopstein
Assistant U.S. Attorneys
(718) 254-6204/6297/6153

Enclosures

cc:    Clerk of Court (RJD) (by ECF)
       Defense counsel (by ECF)

---

provide those releases to the defense in advance of trial to the extent the government may seek to admit them.